[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.,* Slip Opinion No. 2015-Ohio-3807.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3807

THE STATE EX REL. WOODMAN, APPELLEE, *v.* OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.,* Slip Opinion No. 2015-Ohio-3807.]**

*Court of appeals abused its discretion by independently reevaluating medical evidence and substituting its judgment regarding weight and credibility for that of the board of the Public Employees Retirement System.*

(No. 2014-0436—Submitted March 10, 2015—Decided September 22, 2015.)

APPEAL from the Court of Appeals for Franklin County, No. 13AP-406, 2014-Ohio-710.

_____

**Per Curiam.**

{¶ 1} Appellee, Raeanne Woodman, sought a writ of mandamus in the court of appeals to compel appellants, the Ohio Public Employees Retirement System ("OPERS") and its board of trustees (collectively, "the board"), to grant

her application for disability benefits. The Tenth District Court of Appeals granted the writ. Because the court of appeals independently reevaluated the medical evidence and substituted its judgment regarding weight and credibility for that of the board, we hold that the court of appeals abused its discretion, and we reverse.

*Background*

{¶ 2} In 1989, Woodman suffered a hemorrhage in the pons, an area of the brainstem. In 1989 and 1991, she underwent surgery, and part of her pons and part of her cerebellum were removed. As a result of the surgery and the original hemorrhage, the muscles on the right side of Woodman's face are weak, she has lost vision in her right eye and some of her hearing, and she is confined to a wheelchair.

{¶ 3} In 1999, the Ohio State University English Department hired Woodman as an office assistant. Her position was eliminated in November 2011.

{¶ 4} In October 2011, Woodman submitted a disability-retirement application to the board. In the application, Woodman indicated that her condition had progressively worsened over the years, and she identified three specific limitations. Her "biggest problem," she wrote, was her eyesight. In addition, she stated that her handwriting has become illegible even to herself. And third, she spelled out in some detail her worsening hearing problems.

> As I have been getting older, I've found that my hearing ability is decreasing and my vision has become much worse. I now have trouble hearing students and co-workers when they are in the office. Over the years, my condition has progressively worsened. * * * My hearing has also become jumbled. I find that if I'm in an office setting with various noise [sic] and sounds occurring, I am unable to hear and understand the individual student that I might

2

be speaking to at my front desk. I try to lean over my desk to hear the individual, but this has become too limiting.

**{¶ 5}** In support of her application, she submitted a report, dated October 13, 2011, from Donald Mack, M.D., which noted the following disabling conditions: (1) Pontine hemorrhage with hemiparesis, (2) wheelchair bound, (3) carpal tunnel syndrome, and (4) decreased hearing. Dr. Mack described her prognosis for recovery as poor and described her deficits as permanent.

**{¶ 6}** The board required Woodman to submit to an independent medical examination with Dr. Robert Shadel. Dr. Shadel prepared a report in which he concluded that Woodman was not disabled. In response to the specific question whether Woodman's hearing loss affected her ability to perform her job functions, Dr. Shadel wrote:

> In my medical opinion, Ms. Woodman has demonstrated adequate hearing in the examination room to allow her to perform the necessary job functions of office assistant. She is able to hear conversation well and accurately. As I have noted above, she is bright and articulate and has no trouble responding to spoken voice in appropriate verbal manner. *Thus, in my medical opinion, her hearing deficit primarily in right ear does not disable her from the job of office assistant*.

(Emphasis added.)

**{¶ 7}** Woodman's file, which included Dr. Shadel's report, was then sent to Managed Medical Review Organization ("MMro") (the third-party administrator for the board) for review. Based on Dr. Shadel's report, Dr. Jeffrey

Deitch recommended rejection of the claim. The board rejected the claim by letter dated February 16, 2012.

{¶ 8} Woodman appealed. In support of the appeal, she submitted an examination report from Dr. Gerald Steiman. In his report, Dr. Steiman noted that testing on April 4, 2012, showed reduced hearing. Woodman displayed moderate-to-severe neurosensory hearing loss on her right side, with poor speech recognition. And otoacoustic-emission testing "revealed absent in all frequencies in the right ear." Based on her test results and his own examination, Dr. Steiman concluded that her hearing dynamics had been altered such that her discrimination is "markedly reduced" on the right side.

{¶ 9} Dr. Steiman opined that Woodman was unable to perform the functions of an office assistant. However, his report did not indicate whether Woodman's disabling condition was her hearing loss, her vision loss, her paralysis, her memory problems, or some combination of these and other conditions.

{¶ 10} MMro scheduled a second independent medical examination, this one to be conducted by Dr. Eric Schaub. However, there is no indication in the record that the exam ever occurred, or if it did, that the results were considered in subsequent reviews of the file.

{¶ 11} On November 27, 2012, Dr. Elena Antonelli issued a report, which included a review of the supplemental information from Dr. Steiman. Dr. Antonelli concluded that Woodman's subjective complaints "do appear to correlate with the objective clinical findings in the medical documentation," but that Woodman was not disabled from performing her occupation. In support of her conclusion, she offered two rationales:

> There is no evidence that the claimant has significantly worsened
> since she was last able to do her job and she was terminated from

4

her job due to termination of the job itself and not due to disability. There is no evidence that she is unable to be accommodated sufficiently to be able to do her job as she has done in the past.

Dr. Deitch submitted a second report, again recommending that OPERS deny the claim.[1]

{¶ 12} The board officially rejected Woodman's appeal and again found that she was not permanently disabled, by letter dated December 20, 2012. Woodman then filed suit for a writ of mandamus in the Tenth District Court of Appeals. The magistrate recommended denial of the writ, stating:

Although there is some evidence in the record which would indicate that [Woodman's] disabling condition continues to slowly worsen, the magistrate finds that [the board] did not abuse its discretion when it determined that [Woodman] had not demonstrated that her disabling condition was preventing her from being able to perform her job duties as a part-time receptionist.

However, the court of appeals did not follow the magistrate's recommendation.

{¶ 13} Instead, a majority of the court noted that Woodman had complained of worsening hearing that made it impossible to hear what students and coworkers were saying and that Dr. Steiman had confirmed that Woodman had trouble hearing if there was other noise in the room, including other people talking. The majority opinion criticized Dr. Shadel for evaluating Woodman's

---

[1] In its brief to the Tenth District, the board represented that Dr. Andrew Smith also reviewed the file and recommended rejection of the claim. The magistrate's report also refers to Dr. Smith. However, the record contains no medical records or reports from Dr. Smith.

hearing in an examination room only, not in a room where background noise was present.

> Woodman had informed OPERS and the [independent-medical-exam] doctors who examined her at OPERS's request that she had major trouble hearing in her environment at the OSU Department of English. None of the [independent-medical-exam doctors] tested her in anything approximating a normal work environment with background noise. The doctors who evaluated her with a view to such a work environment all concluded that she could not do her work any more [sic].
>
> Based upon this hole in the medical evidence, the decision by OPERS was arbitrary and unreasonable. There was simply no evidence to support a finding that her hearing allowed her to return to work as a receptionist.

The court therefore granted the writ and ordered the board to award benefits.

{¶ 14} Judge Sadler dissented, asserting that the court could not raise an issue regarding the testing environment sua sponte, when the parties had never challenged the adequacy of Dr. Shadel's testing. The board timely appealed. Woodman has submitted an unopposed request for oral argument. We hold that the parties' briefs are sufficient to resolve the appeal, and therefore, we deny the motion.

*Legal analysis*

{¶ 15} In its first proposition of law, the board contends that it did not abuse its discretion in denying benefits, because the record contains "some evidence" to support its conclusion, namely, Dr. Shadel's opinion that Woodman "demonstrated adequate hearing in the examination room to allow her to perform

the necessary job functions of office assistant." By rejecting Dr. Shadel's testing as inadequate, the board contends, the court of appeals abused its discretion and overstepped its bounds by independently reviewing the weight and credibility of the medical evidence.

{¶ 16} Mandamus is an appropriate remedy when no statutory right of appeal is available to correct an abuse of discretion by an administrative body. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14. Because there is no right to appeal an adverse decision regarding disability-retirement benefits, mandamus is an appropriate remedy. *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770, 938 N.E.2d 1028, ¶ 13.

{¶ 17} An abuse of discretion occurs when an administrative body issues a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, 909 N.E.2d 610, ¶ 11. The board abuses its discretion—and a clear right to mandamus exists—if it enters an order that is not supported by some evidence. *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, 991 N.E.2d 218, ¶ 26; *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 19. Only if the board's decision is not supported by *any* evidence will mandamus lie. *State ex rel. Riddell v. State Teachers Retirement Bd.*, 10th Dist. Franklin No. 13AP-660, 2014-Ohio-1646, ¶ 20.

{¶ 18} The board is solely responsible for assessing evidentiary weight and credibility, and a reviewing court should not independently reweigh the medical evidence. *State ex rel. Hart v. Indus. Comm.*, 66 Ohio St.3d 95, 96-97, 609 N.E.2d 166 (1993); *State ex rel. Guthrie v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. Franklin No. 10AP-689, 2011-Ohio-6557, ¶ 13. But that is precisely what the court of appeals did: the majority held that Dr. Shadel's medical opinion

was unworthy of consideration because (in the court's view) his testing protocol was inadequate and less valid than the testing performed by the doctors supporting Woodman's application. But a board does not abuse its discretion by accepting the opinion of its reviewing physician over that of the claimant's treating physician. *Cydrus*, ¶ 30.

{¶ 19} Woodman argues that Dr. Shadel's report cannot constitute "some evidence" to support the decision because the report is internally inconsistent. A report that is internally inconsistent cannot be "some evidence" supporting an agency's decision. *State ex rel. Wyrick v. Indus. Comm.*, 138 Ohio St.3d 465, 2014-Ohio-541, 8 N.E.3d 878, ¶ 14. In his report, Dr. Shadel noted Woodman's facial paresis and right-eye impairments. But according to Woodman, Dr. Shadel then "concluded that poor hearing and poor vision were not reflected by objective findings," thereby contradicting his own clinical findings.

{¶ 20} Woodman's argument is based on a misinterpretation of a poorly written sentence in the report: "Subjective complaints are primarily of poor hearing hemiplegia and poor vision are not reflected by objective findings of disabling hearing or vision dysfunction or by objective findings of extremity functioning that does not appear to be significant to a level of causing any disability." The key word in that sentence is "disabling." Dr. Shadel is not denying the existence of her problems, only their severity.

{¶ 21} *Wyrick*, which Woodman cites in support of her argument, is distinguishable. In *Wyrick*, the examining physician found that the claimant was able to use his hand, wrist, and forearm only if his elbow remained at waist level, and yet somehow concluded that the claimant retained "significant remaining

function of his left upper extremity." *Id.,* ¶ 14. Those two statements are in complete contradiction, unlike the statements in Dr. Shadel's report.[2]

{¶ 22} The fact that Woodman produced medical evidence to contradict Dr. Shadel's opinion is immaterial. *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, 788 N.E.2d 1053, ¶ 29. And in fact, it is not even clear that Woodman produced contradictory evidence. As noted above, Dr. Steiman never identified the disabling condition. Moreover, as noted in Dr. Antonelli's report, Woodman's employment ended for nonperformance reasons and there is no evidence that she was unable to perform her duties at the time her position was eliminated or that her condition had worsened since then.

{¶ 23} The board's appeal presents two additional propositions of law. In proposition No. 2, the board challenges the authority of the appellate court to raise the issue of the hearing-test protocol sua sponte. And in proposition No. 3, the board argues that even if there were legitimate questions concerning the testing of Woodman's hearing, the proper remedy was to remand for further proceedings, not to issue a writ compelling the board to pay benefits. Given our disposition of the first proposition of law, it is unnecessary to address these issues.

*Conclusion*

{¶ 24} For the foregoing reasons, we reverse the judgment of the court of appeals.

Judgment reversed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER, J., dissents.

_____

_____

[2]Woodman also takes issue with Dr. Shadel's observation that her speech was "normal and clear," alleging that he "completely ignor[ed] her slurred speech." But here again, Woodman is attacking the quality of the examination, not identifying disqualifying internal contradictions.

**PFEIFER, J., dissenting.**

{¶ 25} One paragraph from the majority opinion virtually answers the issue before us:

> Dr. Steiman opined that Woodman was unable to perform the functions of an office assistant. However, his report did not indicate whether Woodman's disabling condition was her hearing loss, her vision loss, her paralysis, her memory problems, or some combination of these and other conditions.

Majority opinion at ¶ 9.

{¶ 26} There might be other conditions? Isn't this sad laundry list of known impairments enough to warrant a declaration that Raeanne Woodman is disabled? Apparently not, because there is "some evidence" that Woodman might not be disabled. That that evidence is flawed because it is based on a test of Woodman's hearing that was performed under ideal circumstances, not the circumstances attendant to fulfilling her job, is immaterial to the board and the majority. This is not a malingering malcontent. This is a profoundly disabled person who has established that she is no longer capable of performing her job.

{¶ 27} Instead of siphoning money that it collects to pay pension and disability benefits into a fund to pay health-care costs for people who retire before they are eligible for Medicare, the Ohio Public Employees Retirement System should attend to people, like Woodman, who are disabled. I would affirm the just decision of the court of appeals. I dissent.

_____

Daniel H. Klos, for appellee.

Michael DeWine, Ohio Attorney General, and Matthew T. Green, Senior Assistant Attorney General, for appellants.

January Term, 2015

_____