[Cite as *State ex rel Tessier v. State Teachers Retirement Sys.*, 2017-Ohio-4265.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Maria Tessier, | : | |
| Relator, | : | |
| | : | No. 16AP-215 |
| v. | : | (REGULAR CALENDAR) |
| State Teachers Retirement System, | : | |
| Respondent. | : | |

---

D E C I S I O N

Rendered on June 13, 2017

---

**On brief:** *Rachel C. Wilson,* for relator.

**On brief:** *Michael DeWine,* Attorney General, *John J. Danish*, and *Mary Therese J. Bridge,* for respondent.

---

IN MANDAMUS

BROWN, J.

{¶ 1} Relator, Maria Tessier, has filed an original action requesting this court issue a writ of mandamus ordering respondent, State Teachers Retirement System, to vacate a decision of the chair of the medical review board declaring void relator's second or subsequent application for disability benefits and to enter an order that the second application be processed and considered.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate. On February 27, 2017, the magistrate issued the appended decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering respondent to

vacate its decision declaring that the second application is void and to consider the application in due course. No objections have been filed to that decision.

{¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, relator's request for a writ of mandamus is granted.

*Writ of mandamus granted.*

KLATT and BRUNNER, JJ., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Maria Tessier, | : | |
| Relator, | : | |
| v. | : | No. 16AP-215 |
| State Teachers Retirement System, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 27, 2017

*Rachel C. Wilson,* for relator.

*Michael DeWine,* Attorney General, *John J. Danish* and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS

**{¶ 4}** In this original action, relator, Maria Tessier, requests a writ of mandamus ordering respondent, State Teachers Retirement System of Ohio ("STRS") to vacate the September 2, 2015 decision of the chair of the medical review board ("MRB") that declared void relator's second or subsequent application for disability benefits that was received by STRS on July 30, 2015, and to enter an order that the second application be processed and considered in due course.

Findings of Fact:

**{¶ 5}** 1. On May 19, 2014, relator completed a disability benefit application on a form provided by STRS. Relator indicated on the form that she had been employed by the Olmsted Falls City Schools as a "speech language pathologist."

**{¶ 6}** Section 4 of the form asks the applicant to list specific diagnoses or conditions that are causing disability. In response, relator listed five diagnoses: (1)

"Fibromyalgia," (2) "Depression and anxiety," (3) "Migraines and recent concussion," (4) "Hypothyroidism," and (5) "Asthma."

{¶ 7}   Section 5 of the form asks the applicant to identify her attending physician or physicians.   In response, relator identified Virginia Vatev, M.D., and clinical psychologist Debra Goran, Ph.D.

{¶ 8}   2. STRS received the disability benefit application on May 22, 2014.

{¶ 9}   3. Earlier, on April 21, 2014, Dr. Vatev completed an "Attending Physician's Report" on a STRS form.  This was also received by STRS on May 22, 2014.

{¶ 10} 4. On June 3, 2014, MRB Chair Earl N. Metz, M.D., advised a four-month period of psychiatric treatment before STRS proceeds with the disability benefit application.

{¶ 11} 5.  By letter dated June 4, 2014, STRS informed relator:

> The STRS Ohio medical qualification for disability states that your condition must incapacitate you from the performance of duty for at least 12 months from the date your completed application was received. At this time the Medical Review Board concluded that your condition might improve within the 12 month period following receipt of your application.
>
> After reviewing your attending physician report, the Medical Review Board determined that you must secure psychiatric treatment for four months before further consideration of your application for disability benefits. The Retirement System cannot assume financial responsibility for such treatment. Following four months of treatment, you should request your doctor to furnish this office with a report regarding the treatment provided and progress you have made.

{¶ 12} 6. On June 17, 2014, psychiatrist Diana Dale completed an Attending Physician's Report.  The form asks the physician to identify the "[p]rimary medical condition" for which treatment is being provided.  In response, Dr. Dale wrote "Severe Major Depression."

{¶ 13} On the form, Dr. Dale certified that in her opinion, relator is incapacitated for the performance of duty and that the disability "may be" considered to be permanent. STRS received Dr. Dale's report on June 23, 2014.

{¶ 14} 7. By letter dated June 25, 2014, STRS informed relator that her disability benefit application was being processed.  Relator was informed that STRS had selected psychiatrist Joel Steinberg, M.D., and Deborah Venesy, M.D. (physical medicine) to each perform an independent medical examination.

{¶ 15} 8. On July 9, 2014, at the request of STRS, relator underwent a comprehensive psychiatric evaluation performed by Dr. Steinberg.  In his 22-page narrative report, Dr. Steinberg states as follows beginning at page 21 of his report:

> **MENTAL STATUS EXAM:**
> APPEARANCE & BEHAVIOR: Ms. Tessier was clean and well groomed. She had large eyes, giving her an attractive appearance. She was wearing the knee brace on her left leg. She hobbled as she walked, but she did not use ambulatory aids. While seated, she sat with her left leg fully extended at the knee with her foot resting on another chair. Other than the fading skin rash and her moderate obesity, there were no distinguishing physical characteristics. Ms. Tessier's facial expressions included several episodes of brief tearfulness and frequent socially-appropriate smiling. Eye contact was good. Motor activity fell in the normal range. There were no specific mannerisms.
>
> SPEECH: Ms. Tessier's speech was clear and offered at a normal cadence, pitch and volume. Although it is true that she spoke Italian before English, English is also one of her native languages. There were no traces of any sort of accent.
>
> EMOTIONS: Ms. Tessier's mood was labile and included, as mentioned, episodes of tearfulness. Her affect was mood-congruent and appropriate.
>
> THOUGHT: Ms. Tessier's thoughts were well organized. There was a suitable abundance of ideas. No pathologic associations were noted. In particular, there were no distortions, delusions or ideas of reference. She did not describe depersonalization events.
>
> Ms. Tessier described her house as having been Martha Stewart level of organization and cleanliness, suggesting that she has some mild obsessive features, but none were apparent in the interview. She did not describe any phobias. She clearly has multiple and excessive somatic concerns. She did not report suicidal and/or homicidal ideation.
>
> PERCEPTIONS: Ms. Tessier did not report illusions or hallucinations.

SENSORIUM & INTELLECT: Ms. Tessier was alert. She was fully oriented to time, place, person, situation and circumstance. She transported herself from the Olmsted Falls area to my office alone. Her concentration seemed okay. She worked at a normal pace through the testing. She had arrived at about 8:10 or 8:15 a.m., spent 85 minutes with me and left the office at approximately 1 p.m. There were some disturbances in the office while she was here, but she kept working. Her memory for immediate, recent and remote events appeared to be intact. Her fund of knowledge was good. Her ability to abstract was estimated to fall at the higher end of the average range or perhaps beyond that. Her judgment about matters other than her health appeared to be sound. Her insight was fair. Her attitude toward me was good.

**DISCUSSION**: Ms. Tessier has had psychiatric symptoms for most of her life and she has been receiving mental health care for most of her adult life. She herself views her most pressing problem as that of fibromyalgia. In my opinion, she has **a chronic dysthymic problem** with **superimposed episodes of Major Depressive Disorder**, but these problems have not prevented her from working in the past. I believe that she is in a very difficult situation struggling with management and having been "demoted", as she put it. While it is easy to understand why she might want to leave her position under those circumstances, it does not appear to me that her depression is of a disabling level of severity. A rheumatologist may feel differently and see her as disabled based on the fibromyalgia.

**RECOMMENDATION OF MEDICAL EXAMINER:**
On July 9, 2014, I examined Maria Grazia Tessier. I hereby certify that, in my opinion, the applicant **is not** considered to be permanently or presumed to be permanently (12 continuous months) incapacitated on a psychiatric basis for the performance of duty, and that she **should not** be retired on a psychiatric basis.

I have performed an independent medical evaluation of the above named person. I have not provided care for this person. The opinions rendered are on the basis of the medical documentation, history and physical findings and are independent of the requesting party.

(Emphasis sic.)

{¶ 16} 9. On August 1, 2014, at the request of STRS, relator was examined by Dr. Venesy who practices with the Cleveland Clinic Foundation.    In her five-page narrative report, Dr. Venesy states:

> As requested, I personally saw and examined Ms. Maria Tessier on August 1, 2014 at the Cleveland Clinic. Ms. Tessier was provided a brochure and information regarding the nature of an independent medical evaluation as performed at the Cleveland Clinic including the limited confidentiality and where this letter would be sent.
>
> Ms. Tessier is applying for disability based on fibromyalgia, depression, anxiety, migraine headaches, a recent mild concussion, hypothyroidism, and asthma. Ms. Tessier is a 50-year-old right-hand dominant speech and language pathologist who was diagnosed with fibromyalgia many years ago. She noticed that over the past couple of years, her stress has increased and she has had more difficulty with an increased case load at work. She complains of pain in her neck and upper back, a crawling sensation that goes down the back, increased fatigue, depression, and difficulty managing the paperwork involved with her job. She is on vacation right now. She also has a left knee injury as a result of an auto accident in March 2014, and she is scheduled to have knee surgery next week. As noted, her fatigue, pain, and depression have increased over the past couple of years especially after the recent auto accident. She also notes a mild concussion which has improved, but she has seen a neurologist for a different type of headache after the auto accident.
>
> From a fibromyalgia treatment perspective, she has tried all kinds of medications and alternative treatment, including Lyrica, Cymbalta, and Savella. She was unable to take these medications due to side effects. She has had physical therapy but not aquatic therapy. She is receiving counseling for depression. She has tried acupuncture without any change. She has also participated in the integrative medicine clinic at the Cleveland Clinic without much success. She has tried massage, Reiki, yoga, and meditation.
>
> Her symptoms in regard to pain are worse with prolonged walking activity. Right now, over the summer, she is able to do laundry and lie down and unload the dishwasher and lie down, so she is able to manage her symptoms that way. She feels better with a hot shower, sleep, and meditation.

{¶ 17} 10. Dr. Venesy also completed an STRS form captioned "Medical Examiner's Evaluation Form."

{¶ 18} On the form, Dr. Venesy certified that relator "is not" considered to be permanently or presumed to be permanently (12 continuous months from date of application) incapacitated for the performance of duty, and that she "should not" be retired.

{¶ 19} 11. Pursuant to Ohio Adm.Code 3307:1-7-01(I), three physicians were chosen to be the MRB panel in relator's case. The MRB physicians are (1) psychiatrist Jeffery C. Hutzler, M.D., (2) Claire V. Wolfe, M.D., and (3) James Allen, M.D.

{¶ 20} 12. On August 15, 2014, Dr. Hutzler wrote to Dr. Metz. Following his review of the medical reports of record including the reports of Drs. Steinberg and Venesy, Dr. Hutzler stated:

> After reviewing these documents it is my recommendation that Maria Tessier is not considered to be permanently or presumed to be permanently incapacitated for the performance of duty and that she should not be retired from a global medical or psychiatric standpoint.

{¶ 21} 13. On August 16, 2014, Dr. Wolfe wrote:

> Maria Tessier is a 50 [year old] speech and language pathologist who has worked for the Olmsted Falls City Schools. She alleges inability to continue working due to fibromyalgia, depression and anxiety.
>
> Ms. Tessier was diagnosed with fibromyalgia several years ago. She has been unable to tolerate most medications, is intolerant of exercise & has not responded to alternative therapies. She has nevertheless been able to continue teaching up to the current time when additional stresses at work with administration have worsened her anxiety and depression and thus her fibromyalgia. A recent motor vehicle accident in 3/2014 added a mild concussion, a left knee injury and more pain.
>
> Her concussion workup was negative for severe head trauma and she has been able to work, care for her son, drive and care for her needs. Her left knee workup has documented mild degenerative changes, ligamentous strain, and a possible meniscal injury for which surgery was to have been done. Her concussion and knee events would not be expected

to be incapacitating for twelve months. Her fibromyalgia is long-standing and is also not impairing for teaching.

Ms. Tessier has also had lifelong issues with depression and anxiety with psychiatric treatment since she was a teenager. Her thorough IME evaluation by Dr. Joel Steinberg noted diagnoses of dysthymia and somatoform disorder. She was able to attend the exam unaccompanied, participated fully in all testing and the interview, and it was Dr. Steinberg's impression that, although impaired, she was still capable of teaching.

There is no documentation in the record that would contradict the findings of Drs. Venesy and Steinberg and I would agree with their impressions that Ms. Tessier is not disabled from her job.

{¶ 22} 14. On August 16, 2014, Dr. Allen wrote to Dr. Metz:

In summary, this speech and language teacher has been determined to not be disabled due to psychiatric disease or fibromyalgia by independent medical examiners who are experienced in these conditions. Laboratory testing indicates that she is no longer hypothyroid while on thyroid hormone replacement. She is no longer anemic. She will be having knee surgery this month and is anticipated to require being off work for a period of time while recovering from that surgery. I recommend that disability retirement be denied. She will require being off work for a period of time following her knee surgery until cleared to return to duties (from a post-op knee surgery standpoint) by her surgeon.

{¶ 23} 15. On August 19, 2014, Dr. Metz wrote to the retirement board:

The disability application of the above named member and the findings of the appointed examiners have been studied by the following Medical Review Board members, Dr. Claire Wolfe, Dr. James Allen, and Dr. Jeffery Hutzler. The Medical Review Board concurs with the opinions of the appointed examiners and recommends that disability benefits be denied.

{¶ 24} 16. By letter dated August 21, 2014, STRS informed relator that the MRB concluded that relator does not meet the criteria for "permanent disability."

{¶ 25} 17. By letter dated September 19, 2014, STRS informed relator that the STRS retirement board took official action at its meeting on September 18, 2014 to deny the application for disability benefits.

{¶ 26} The STRS letter also informed relator that she had the right to appeal the retirement board decision "based on additional medical evidence contrary to the findings of the Medical Review Board."

The STRS letter further advised:

You have the right to again apply for disability benefits if you can show through medical records progression of the former disabling condition or a new condition expected to last at least 12 months from the date the new application is filed with STRS Ohio.

{¶ 27} 18. On December 16, 2014, relator, through counsel, timely filed an appeal of the September 18, 2014 decision of the retirement board. With her appeal, relator submitted additional medical evidence.

{¶ 28} 19. On January 25, 2015, Dr. Metz wrote to the retirement board:

Additional information was received—either relating to arthroscopic surgery on her right knee in August 2014 or to problems antecedent to her independent examinations. None of this material adds in a substantial way to her application. The recommendation of the MRB remains the same.

{¶ 29} 20. On February 18, 2015, an appeal hearing was held before the STRS Disability Review Panel. Relator appeared at the hearing with her counsel.

{¶ 30} 21. By letter dated February 20, 2015, STRS informed relator that, on February 19, 2015, the retirement board took official action to affirm its prior decision to deny the application for disability benefits.

{¶ 31} 22. On June 3, 2015, relator completed another disability benefit application on a form provided by STRS.

{¶ 32} At section 4 of the form, the applicant is asked to state the specific diagnoses or conditions that are causing disability. In response, relator listed six conditions: (1) "Fibromyalgia," (2) "Major Recurrent Depression," (3) "Generalized Anxiety Disorder," (4) "Knee pain," (5) "Migraine Headaches," and (6) "Diabetes Mellitus." At section 5 of

the form, the applicant is asked to identify her attending physicians. In response, relator listed (1) Dr. Virginia Vatev, (2) Dr. Diana Dale, and (3) Melanie Higgins, Ph.D.

{¶ 33} 23. On July 30, 2015, STRS received relator's second disability benefit application.

{¶ 34} 24. Earlier, on May 27, 2015, relator was examined by psychologist Melanie Higgins, Ph.D. Based on the examination, Dr. Higgins completed an "Attending Physician's Report" on June 22, 2015. On the report, Dr. Higgins certified that relator is incapacitated for the performance of duty and that the disability is expected to last 12 or more months from the date of certification. Dr. Higgins' report was received by STRS on July 30, 2015.

{¶ 35} 25. According to STRS, Dr. Higgins' report is invalid because an attending physician's report must be completed by an M.D., D.O., or D.P.M., as indicated on the form. Also according to STRS, Dr. Higgins' report is invalid because the examination on which it is based did not occur within "the last two months" of the application date as required by Ohio Adm.Code 3307:1-7-01(B).

{¶ 36} 26. Earlier, on April 8, 2015, relator was examined by Dr. Vatev. Based on the examination, Dr. Vatev completed an "Attending Physician's Report," on May 18, 2015. On the form, Dr. Vatev certified that relator is incapacitated for the performance of duty and that the disability is expected to last 12 or more months from the date of certification.

{¶ 37} The form asks the attending physician to state the "[p]rimary medical condition for which I am providing treatment."

{¶ 38} In response, Dr. Vatev wrote: "[Left] knee injury/surgery meniscus tear 3/8/14." Dr. Vatev's report was received by STRS on July 30, 2015.

{¶ 39} According to STRS, Dr. Vatev's report is invalid because the examination on which it is based did not occur within "the last two months" of the application date as required by Ohio Adm.Code 3307:1-7-01(B).

{¶ 40} 27. On May 12, 2015, relator was examined by psychiatrist Diana Dale. Based on the examination, Dr. Dale completed an "Attending Physician's Report" on June 16, 2015.

{¶ 41} In response to the form's query to state the "[p]rimary medical condition for which I am providing treatment," Dr. Dale wrote "Major Recurrent Depression,

Generalized Anxiety Disorder."   Dr. Dale also listed "Fibromyalgia" as an "other significant medical condition."  Dr. Dale's report was received by STRS on July 30, 2015.

{¶ 42} According to STRS, Dr. Dale's report is invalid because the examination on which it is based was not performed within "the last two months" of the application date as required by Ohio Adm.Code 3307:1-7-01(B).

{¶ 43} 28. By letter or memorandum dated August 4, 2015, STRS informed relator:

> We received an incomplete disability application packet. Processing of your disability application cannot begin until all portions of your application packet are received. Please return or complete the additional information checked below within the next 30 days. Failure to respond by **September 4, 2015 may**  result in the cancellation of your application.

(Emphasis sic.)

{¶ 44} The STRS letter identified the following preprinted language as describing the problem:

> Attending Physician's Reports need to be received by STRS Ohio within 60 days of most recent appointment date. Please schedule another appointment with the doctors listed above and have them submit updated reports within 60 days of the appointment date.

{¶ 45} STRS identified the attending physician's reports of Drs. Dale, Vatev and Higgins as being non-compliant with the rule.

{¶ 46} 29. On August 18, 2015, relator was examined by psychologist Melanie Higgins.  In her new "Attending Physician's Report," received by STRS on August 31, 2015, Dr. Higgins certified that relator is incapacitated for the performance of duty and that the disability is expected to last 12 or more months from the date of certification, i.e., August 18, 2015.

{¶ 47} In response to the query to state the "[p]rimary medical condition for which I am providing treatment," Dr. Higgins wrote:  "Increased depression since auto accident injury March 2014."

{¶ 48} 30. On August 20, 2015, relator was examined by psychiatrist Diana Dale. In her new "Attending Physician's Report," received by STRS on August 31, 2015, Dr. Dale

certified that relator is incapacitated for the performance of duty and the disability is expected to last 12 or more months from the date of certificate.

{¶ 49} In response to the query to state the "[p]rimary medical condition for which I am providing treatment," Dr. Dale wrote "Major Recurrent Depression, Generalized Anxiety Disorder." Dr. Dale again listed "Fibromyalgia" as the "other significant medical condition" which is "disabling."

{¶ 50} On August 26, 2015, relator was examined by Dr. Vatev. In her new "Attending Physician's Report," received by STRS on August 31, 2015, Dr. Vatev certified that relator is incapacitated for the performance of duty and that the disability is expected to last 12 months or more from the date of certification.

{¶ 51} In response to the query to state the "[p]rimary medical condition for which I am providing treatment," Dr. Vatev wrote "[Left] knee injury/surgery meniscus tear 3/8/14."

{¶ 52} The "Attending Physician's Report" form also asks the physician to identify "[o]ther significant medical condition(s)" and to indicate by marking a box whether the condition is "disabling." In response, Dr. Vatev listed three significant medical conditions: (1) "fibromyalgia," (2) "new onset [diabetes mellitus] II," and (3) "depression." By her mark, Dr. Vatev indicated that the diabetes is not disabling, but the fibromyalgia and depression are disabling.

{¶ 53} 31. According to STRS, upon the August 31, 2015 receipt of the new attending physician's reports, STRS marked the second application complete.

{¶ 54} 32. By letter dated September 2, 2015, STRS informed relator:

> According to the Administrative Code 3307:1-7-05 C, any subsequent applications for disability benefits filed after a denial of benefits shall be submitted with objective and pertinent medical evidence supporting progression of the former disabling condition or evidence of a new disabling condition. If such evidence is evaluated by the medical review board and found to be inadequate to establish the progression of the disabling condition or the existence of a new disabling condition, the application shall be voided and a notice will be sent to the applicant. If two years have elapsed since the date the member's contributing service terminated, no subsequent application shall be accepted.
>
> The Chairman of the Medical Review Board reviewed your application and medical reports and made the determination

that there is no objective medical evidence to show progression or a new condition supported by your attending physicians as disabling, since the completion of your prior application in February 2015; therefore, the disability application received on July 30, 2015 is void.

{¶ 55} 33. On March 23, 2016, relator, Maria Tessier, filed this mandamus action.

Conclusions of Law:

{¶ 56} As stated in the September 2, 2015 STRS letter, the MRB chair declared void relator's subsequent or second application based on his review. Apparently, the chair's decision to void the second application has been treated by STRS as a final decision. There is no indication in the record that the MRB evaluated the second application.

{¶ 57} Because the MRB chair did not obtain authority to issue a final decision to declare a subsequent application void without MRB review until Ohio Adm.Code 3307:1-7-05(C) was amended effective June 10, 2016, STRS abused its discretion in failing to further process the second application.

{¶ 58} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

**Relevant Administrative Rules**

Effective May 8, 2014, former Ohio Adm.Code 3307:1-7-05(C) stated:

Any subsequent applications for disability benefits filed after a denial or termination of benefits shall be submitted with additional medical evidence not previously submitted in connection with prior applications for disability benefits, supporting progression of the former disabling condition or evidence of a new disabling condition. If such evidence is evaluated by the medical review board and found to be inadequate to establish the progression of the disabling condition or the existence of a new disabling condition, the application shall be voided and a notice will be sent to the applicant.

{¶ 59} Effective June 10, 2016, Ohio Adm.Code 3307:1-7-05(C) was amended. It currently states:

Any subsequent applications for disability benefits filed after a denial or termination of benefits shall be submitted with additional medical evidence not previously submitted in connection with prior applications for disability benefits,

supporting progression of the former disabling condition or evidence of a new disabling condition. If such evidence is evaluated by the medical review board chair and found to be inadequate to establish the progression of the disabling condition or the existence of a new disabling condition, the application shall be voided and a notice will be sent to the applicant. The decision of the medical review board chair shall be final.

Ohio Adm.Code 3307:1-7-01 currently provides the following definitions:

(B) "Application" includes all of the following: an application for disability benefits; an attending physician's report based on an examination that was completed within the last two months and includes medical evidence, an employer report, and a job description provided by the last employer. The application for disability benefits, attending physician's report and employer report shall be made on forms provided by the retirement system. * * *

(C) "Attending physician" shall mean an applicant's physician of choice, who has established a therapeutic relationship with the applicant and has completed a report and certified on forms provided by the retirement system that in the attending physician's opinion an applicant is incapacitated for the performance of duty by a disabling condition that is presumed to be permanent. The attending physician shall provide standard objective and pertinent medical evidence supporting the opinion.

* * *

(G) "Independent medical examiner" shall mean a competent physician neither involved in a treatment relationship with an applicant or recipient nor otherwise employed by the retirement system, who shall be designated by the chair of the medical review board to conduct an impartial examination.

* * *

(I) "Medical review board" shall mean the group of independent physicians designated by the retirement board under the direction of a chair appointed by the retirement board to assist in the evaluation of medical examinations and information. The members of the medical review board may be asked in panels of three or more to review any application and provide their conclusions as to whether an applicant will

be mentally or physically incapacitated from the performance of duty for at least twelve months.

(J) A disabling condition shall be "presumed to be permanent," if it physically or mentally incapacitates an applicant from the performance of regular duty for a period of at least twelve months from the date of the retirement system's receipt of the completed application.

Ohio Adm.Code 3307:1-7-02 currently provides:

(A) The retirement board shall appoint an independent physician to serve as chair of the medical review board and as medical advisor to the retirement board. The chair so appointed shall:

(1) Request and review medical evidence from the applicant or applicant's attending physicians and other relevant sources regarding the nature, findings, extent, treatment, duration and functional limitations imposed by the conditions the applicant claims as disabling.

Any medical evidence or other information submitted by or on behalf of an applicant or recipient that is determined by the chair of the medical review board to not be objective or pertinent to the applicant's or recipient's claimed medical condition will not be considered, including duplicate records, internet articles or medical records not related to the current application or reexamination.

(2) Assign and oversee competent and impartial independent medical examiners to conduct the medical examinations and tests the chair deems necessary and appropriate to the evaluation of an application. Examinations will be assigned only for conditions listed on the application and supported as disabling by the attending physician.

**Relevant Case Law**

{¶ 60} Mandamus is the appropriate remedy when no statutory right of appeal is available to correct an abuse of discretion by an administrative body such as the STRS retirement board. *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14.

{¶ 61} The STRS retirement board abuses its discretion—and a clear right to mandamus exists—if it enters an order that is not supported by some evidence. *State ex rel. Woodman v. Ohio Public Emps. Retirement Sys.,* 144 Ohio St.3d 367, 2015-Ohio-

3807, citing *State ex rel. Nese v. State Teachers Retirement. Bd. of Ohio,* 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 26.

{¶ 62} STRS has no clear legal duty cognizable in mandamus to specify what evidence it relied on and to explain the reasoning for its retirement board's decision. *Pipoly* at ¶ 22.

{¶ 63} In determining whether to grant an application for disability benefits, the STRS retirement board is not required to give greater weight to the medical reports and opinions of the applicant's treating physicians. *Pipoly* at ¶ 23-25. *See State ex rel. Bell v. Indus. Comm.,* 72 Ohio St.3d 575 (1995) (The Industrial Commission is not required to give enhanced weight to the attending physician's report in determining whether to award permanent total disability compensation).

**Analysis**

{¶ 64} As announced by the September 2, 2015 STRS letter to relator, pursuant to Ohio Adm.Code 3307:1-7-05(C), the MRB chair determined that there is no objective medical evidence to show progression or a new condition supported by the attending physicians as disabling with respect to relator's second application received by STRS on July 30, 2015. According to the September 2, 2015 STRS letter, because the MRB chair made the determination, the second application is void.

{¶ 65} At the time that the MRB chair rendered his determination that the second application is void, former Ohio Adm.Code 3307:1-7-05(C) did not grant to the MRB chair the authority to issue a final decision as to relator's second application. The authority to issue a final decision as to a subsequent application was not expressly given to the MRB chair until Ohio Adm.Code 3307:1-7-05(C) was amended effective June 10, 2016, i.e., after the MRB chair's September 2, 2015 determination at issue here. Accordingly, STRS has abused its discretion by treating the September 2, 2015 decision of the MRB chair as a final order declaring the second application void.

{¶ 66} Accordingly, based on the foregoing analysis, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent to vacate its decision declaring that the second application is void, and to consider the application in the due course of law.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).