[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Burroughs v. Ohio Hwy. Patrol Retirement Sys. Bd.,* Slip Opinion No. 2017-Ohio-6923.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-6923

THE STATE EX REL. BURROUGHS, APPELLEE, *v.* OHIO HIGHWAY PATROL RETIREMENT SYSTEM BOARD ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Burroughs v. Ohio Hwy. Patrol Retirement Sys. Bd.,* Slip Opinion No. 2017-Ohio-6923.]

*Mandamus—Writ sought to compel Ohio Highway Patrol Retirement System Board to vacate its termination of his disability-retirement benefits—Court of appeals' abused its discretion in granting limited writ ordering the board to conduct a physical-capacity evaluation—Board had no duty to conduct physical-capacity evaluation prior to terminating disability-retirement benefits—Court of appeals' judgment reversed and writ denied.*

(No. 2016-0921—Submitted May 2, 2017—Decided July 26, 2017.)

APPEAL from the Court of Appeals for Franklin County, No. 15AP-89, 2016-Ohio-2808.

_____

**Per Curiam.**

{¶ 1} Appellee, Jeffrey A. Burroughs, sought a writ of mandamus in the Tenth District Court of Appeals to compel appellants, Ohio Highway Patrol Retirement System Board and Ohio Highway Patrol Retirement System (collectively, "the board"), to vacate their termination of his disability benefits and pay him the benefits he would have received had it not been for the termination. The Tenth District granted a limited writ and ordered the board to conduct a "physical-capacity evaluation" of Burroughs.

{¶ 2} Because we conclude that the board had no legal duty to conduct a physical-capacity evaluation before terminating Burroughs's disability benefits and that the board's decision was based upon sufficient medical evidence, we hold that the court of appeals abused its discretion in granting Burroughs a limited writ of mandamus. Accordingly, we reverse the court of appeals' judgment and deny the writ.

**Background**

{¶ 3} Burroughs, a state trooper, began having neck pain in 2006 or 2007. In May 2010, an MRI showed evidence of "multiple level spondylitic disc protrusion and impingement" in his cervical spine "with disc protrusions and stenosis." To address these issues, Gregory Mavian, D.O., performed a "multiple level cervical discectomy and fusion" in September 2010.

{¶ 4} Two months later, Burroughs applied for disability-retirement benefits. He submitted evidence from Dr. Mavian, who opined that Burroughs was "totally incapacitated" from performing his duties as a state trooper and that his disability was permanent. Dr. Mavian indicated that his primary concern was Burroughs's vulnerability to neck trauma. Two additional doctors examined Burroughs and opined that he was not able to perform his duties as a state trooper.

{¶ 5} Effective April 28, 2011, the board approved Burroughs's disability-retirement application.

2

**{¶ 6}** In conjunction with the board's annual disability evaluation, Burroughs submitted new evidence from Dr. Mavian in May 2013. Dr. Mavian opined that Burroughs was unable to return to work and was permanently disabled. The board's medical consultant, Dr. Earl Metz, M.D., reviewed the submission and concluded that Burroughs's disability was ongoing.

**{¶ 7}** However, in 2014, the board learned that Burroughs had completed an athletic event called "Savage Race Ohio 2014" in under two and a half hours. The record contains a brochure describing this event as "an intense 5-7 mile obstacle run with 25 world class obstacles, mud, fire, and barbed wire." It indicates that the race is "extreme," designed to "push your limits," and filled with "insane obstacles" on the "gnarliest terrain available."

**{¶ 8}** In light of this information, the board required Burroughs to submit to an independent medical examination with a board-selected physician, Dr. Nancy Vaughan. After physically examining Burroughs, Dr. Vaughan reported:

> Examination of the cervical spine revealed a scar from previous surgery. There was no tenderness to palpation at the cervical, thoracic, or lumbar region. There was no scapular winging. There was no muscle atrophy about the shoulder region.
>
> Examination of the upper limbs did not reveal any muscle atrophy. There was no edema. Light touch sensation was intact throughout the upper limbs. There was no weakness on manual muscle testing. Reflexes were symmetric. He had full range of motion of the shoulders. * * * He had normal muscle tone. There were calluses on his palms. * * * There was no evidence of decreased coordination.
>
> Light touch sensation was intact throughout the lower limbs. There was no weakness on manual muscle testing. Reflexes were

symmetric. There was no muscle atrophy in the thighs, calves, or feet. He had full range of motion of the hips and knees.

Dr. Vaughan concluded that Burroughs displayed "no evidence" of spinal injury and described him as "fully recovered" and no longer disabled.

{¶ 9} With regard to the question whether Burroughs was totally disabled from his job as a state trooper, Dr. Vaughan declared that Burroughs was "[a]pparently * * * fully recovered from his cervical decompression and fusion." She noted the evidence about the 2014 Savage Race and concluded: "Based on the fact that he was able to complete this vigorous event and looking at his job description provided, it is my medical opinion that at this point in time he has recovered and he could physically perform his assigned duties as a highway patrolman."

{¶ 10} The board's medical consultant, Dr. David A. Tanner, reviewed Burroughs's file and Dr. Vaughan's report and agreed with Dr. Vaughan's findings and recommendation. The board notified Burroughs of its decision to terminate his disability-retirement benefits effective August 21, 2014.

{¶ 11} Burroughs appealed. In support of his appeal, he submitted examination reports from Dr. Eric Legg and Dr. Mavian. Dr. Legg stated that he "would not recommend return to full duty work as a police officer due to his lack of range of motion of his cervical spine and the potential for significant injury to his fused cervical spine in the event of a physical confrontation." Dr. Mavian opined that Burroughs "should not participate in any law enforcement activities so as to risk a serious injury and recurrent symptoms of his cervical spine." Dr. Mavian further recommended "a physical capacity evaluation in a structured formal ma[nn]er to assess his physical abilities."

{¶ 12} Dr. Tanner reviewed the new evidence and agreed with Dr. Mavian's recommendation that Burroughs receive a physical-capacity evaluation, stating,

4

"This testing outcome will provide additional information as to the functional abilities of Mr. Burroughs with regard to the duties of a State Highway Patrol[man]."

{¶ 13} But the board did not refer Burroughs for a physical-capacity evaluation. Instead, on October 16, 2014, it upheld its prior decision to terminate disability-retirement benefits.

{¶ 14} On February 9, 2015, Burroughs filed a complaint for a writ of mandamus in the Tenth District Court of Appeals seeking an order compelling the board to vacate its termination of his disability benefits and pay him the benefits he would have received had it not been for the termination. The case was referred to a magistrate, who recommended that the writ be denied:

> [B]y its very description, the Savage Race is not a controlled environment. Relator's participation posed the threat of damage to his neck and constitutes some evidence that, following surgery, his prognosis for improvement was indeed good. Based upon relator's ability to participate in such an event and the report of Dr. Vaughan, the magistrate finds that the board did not abuse its discretion when it decided to terminate relator's disability [benefits], and this court should deny his request for a writ of mandamus.

2016-Ohio-2808, ¶ 44.

{¶ 15} The court of appeals adopted the magistrate's findings of fact but modified the conclusions of law and granted Burroughs a "limited writ of mandamus for the purpose of completing a physical capacity evaluation to determine whether there is some evidence that relator could physically perform *all* of his assigned duties as a state trooper." (Emphasis sic.) *Id*. at ¶ 10.

**Analysis**

*Duty to Conduct Physical-Capacity Evaluation Prior to Termination of Benefits*

{¶ 16} In its first proposition of law, the board contends that it has no statutory or regulatory duty to conduct a physical-capacity evaluation prior to terminating disability-retirement benefits. Thus, the board argues, the court of appeals abused its discretion when it impermissibly created the legal duty upon which it based its limited grant of a writ of mandamus. We agree.

{¶ 17} Generally, a member of the Ohio Highway Patrol Retirement System is eligible for disability retirement if the member "becomes totally and permanently incapacitated for duty in the employ of the state highway patrol." R.C. 5505.18(A). In determining whether this standard is met, the board "shall consider the written medical * * * report, opinions, statements, and other competent evidence." *Id*. Under R.C. 5505.18(G), the board also has sole authority to create rules to facilitate the disability-retirement process "including rules that specify the types of health-care professionals the board may appoint."

{¶ 18} The board has adopted administrative rules providing that it "*shall * * * [s]chedule a medical examination with an examining physician recommended by the medical advisor*" if the medical advisor "determines the benefit recipient may no longer be disabled." (Emphasis added.) Ohio Adm.Code 5505-3-03(C)(2). The rules further provide that the board may request that the benefit recipient "undergo a medical examination if information is received at any time which indicates the benefit recipient may no longer be eligible for disability benefits." Ohio Adm.Code 5505-3-03(F). The board "shall review the examining physician's report and if it concurs with the examining physician's certification that the benefit recipient no longer meets the disability standards set forth in section 5505.18 of the Revised Code, the disability benefits shall terminate." Ohio Adm.Code 5505-3-03(C)(3).

**{¶ 19}** "It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus." (Emphasis deleted.) *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18. "A court must give due deference to the agency's reasonable interpretation of the legislative scheme." *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 287, 750 N.E.2d 130 (2001).

**{¶ 20}** In light of this standard, we hold that the court of appeals abused its discretion in ordering the board to conduct a physical-capacity evaluation of Burroughs and reconsider its termination of his benefits. When it received information indicating that Burroughs may no longer be eligible for disability benefits, the board was entitled to ask him to submit to an independent medical examination. The board also had the authority to terminate Burroughs's benefits if it concurred with the examining physician's certification that Burroughs was no longer "totally and permanently incapacitated for duty." Ohio Adm.Code 5505-3-03(C)(3) and R.C. 5505.18(A).

**{¶ 21}** In so holding, we reject Burroughs's argument that the limited writ was appropriate and is supported by this court's decisions affirming appellate courts' "use of limited writs of mandamus in analogous contexts." In support of this argument, he cites *State ex rel. Worrell v. Ohio Police & Fire Pension Fund*, 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380; *State ex rel. Posey v. Indus. Comm.*, 12 Ohio St.3d 298, 466 N.E.2d 548 (1984); and *State ex rel. Pontillo v. Pub. Emps. Retirement Sys. Bd.*, 98 Ohio St.3d 500, 2003-Ohio-2120, 787 N.E.2d 643. However, in *Worrell*, we specifically declined to "consider the propriety of the court of appeals' holding that the [Ohio Police and Fire Pension Fund's board] had a duty to issue a decision stating the basis for its denial," because the board failed to appeal the judgment granting the limited writ. *Id.* at ¶ 9, fn. 1.

**{¶ 22}** In *Posey*, we granted a limited writ of mandamus to require the Industrial Commission to perform further medical evaluations because the record did not "aid the commission in determining the validity of [the] appellant's application for workers' compensation benefits." *Id.* at 301. In the workers' compensation context, "there must be a causal connection between an injury arising out of and in the course of a worker's employment and a claimed disability." *Id.* at 300. And because none of the four medical reports in the commission's record contained an opinion as to whether the workplace injury the appellant had sustained continued "to cause him to be temporarily and totally disabled," *id.*, we held that the commission had abused its discretion when it denied benefits. Accordingly, the limited writ was justified in that case because the commission's decision was not based on sufficient evidence.

**{¶ 23}** In *Pontillo*, we declined to order a limited writ to compel the Public Employees Retirement System Board to consider additional medical evidence that the appellant had submitted after the administrative-appeal period had elapsed. *Id.* at ¶ 25, 34 (explaining that Pontillo had an adequate remedy in the ordinary course of law through administrative appeal and noting that the fact that he had failed to submit his evidence within the applicable time period did not "render the remedy inadequate"). Therefore, not one of the three decisions cited by Burroughs supports the court of appeals' judgment in this case.

*Termination of Disability-Retirement Benefits*

**{¶ 24}** In its second proposition of law, the board contends that its decision to terminate Burroughs's disability-retirement benefits was supported by sufficient evidence. According to the board, the court of appeals abused its discretion when it independently reviewed and judged the weight and credibility of the medical evidence and determined that the board's evidence was insufficient to support the board's decision. For the reasons below, we agree.

{¶ 25} A benefits determination, even when there are facts in dispute, "is within the final jurisdiction of the commission, subject to correction by action in mandamus only upon a showing of an abuse of discretion." *State ex rel. Crosby v. Dept. of Mental Retardation & Dev. Disabilities*, 38 Ohio St.3d 179, 527 N.E.2d 812 (1988). "The quantum of evidence necessary to support the retirement-system board's decision is not a heavy one." *State ex rel. Nese v. State Teachers Retirement Bd.*, 136 Ohio St.3d 103, 2013-Ohio-1777, 991 N.E.2d 218, ¶ 26.

{¶ 26} The board's decision to terminate Burroughs's benefits was based on the opinions of both Dr. Vaughan, who performed an independent medical examination of Burroughs, and the board's medical adviser, Dr. Tanner, who agreed with Dr. Vaughan's opinion. The board also considered the evidence that Burroughs had participated in the Savage Race in 2014.

{¶ 27} At the time of Dr. Vaughan's exam, nearly four years had passed since Burroughs's spinal surgery. According to her report, he complained of "achy pain in the neck, numbness and tingling in the upper limbs and left lower limb" and scored his "intense pain" as a three on a ten-point scale. But upon physical examination, Dr. Vaughan found that he displayed "no tenderness to palpation at the cervical, thoracic, or lumbar region," "no muscle atrophy about the shoulder region," "no weakness on manual muscle testing," and a "full range of motion of the shoulders."

{¶ 28} She noted that Burroughs told her that he still had screws and steel in his neck and therefore was unable to perform his duties as a highway patrolman. Dr. Vaughan also reviewed the job duties and responsibilities of a state trooper and described them in the report: "[H]e must wear a gun belt, subdue violators, operate a patrol car, wear a seatbelt, assist in rescuing injured persons, climb over obstacles, vehicles, and rough terrain, run after fleeing violators, [and] lift heavy objects."

{¶ 29} In her report, Dr. Vaughan discussed Burroughs's participation in the 2014 Savage Race, noting that the race's obstacle course required participants

to "jump[] into ice water baths, sprint[] uphill through a sea of tires, climb[] over an 8-foot wall, run[] through thick, shoe-sucking mud, carry[] a log or sand bag, jump[] off of a building into deep water, jump over rows of fire, [and] low crawl through mud."

{¶ 30} Based upon her physical examination of Burroughs and her review of the state-trooper job duties and responsibilities, Burroughs's past medical history, and Burroughs's description of his current condition, Dr. Vaughan concluded:

Apparently he is fully recovered from his cervical decompression and fusion. No myelopathic findings on examination today. According to the records he was able to participate in a very rigorous event called The Savage Race of Ohio. * * * Based on the fact that he was able to complete this vigorous event and looking at his job description provided, it is my medical opinion that at this point in time he has recovered and he could physically perform his assigned duties as a highway patrolman.

On a separate form provided by the board, Dr. Vaughan checked the box indicating that Burroughs "is *not* totally and permanently incapacitated [as defined in Ohio Adm.Code 5505-3-02] for duty with the Ohio State Highway Patrol." (Underlining sic.)

{¶ 31} The board's medical adviser, Dr. Tanner, reviewed the report and in a memo to the board stated: "I have reviewed the [independent-medical-examination] report by Dr. Vaughan and concur with her findings and recommendations." He specifically noted that during Dr. Vaughan's physical examination, Burroughs demonstrated that he had a normal range of motion and

Dr. Vaughan found no tenderness to any area of his spine or muscle atrophy in his shoulders or upper or lower limbs.

**{¶ 32}** Dr. Vaughan's independent medical examination and report and Dr. Tanner's agreement with her assessment constitute "some evidence" supporting the board's decision in this case. *See State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, 43 N.E.3d 426, ¶ 17 ("The [retirement] board abuses its discretion—and a clear right to mandamus exists—if it enters an order that is not supported by some evidence"); *State ex rel. Grein v. Ohio State Highway Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, 879 N.E.2d 195, ¶ 9 ("As long as there is sufficient evidence to support the retirement-system board's decisions, we will not disturb them"). And the evidence regarding Burroughs's participation in the Savage Race was "other competent evidence" that the board was required to review in determining whether Burroughs's benefits should be continued. *See* R.C. 5505.18(A) (the board "shall consider the written medical or psychological report, opinions, statements, and other competent evidence").

**{¶ 33}** Nevertheless, Burroughs contends that the court of appeals was correct when it found that his "participation in the race is not evidence sufficient to demonstrate he could perform the duties of a state trooper." 2016-Ohio-2808 at ¶ 5. In finding that the board's decision was not supported by sufficient evidence, the court of appeals emphasized that

> [t]he Savage Race description contained in the record, and Dr. Vaughan's more detailed summary description of the race, may constitute some evidence that relator could perform *some* duties of a state trooper. However, the descriptions do not constitute some evidence that full participation in the race would equate with relator being able to perform *all* duties of a state trooper.

(Emphasis sic.) *Id*. However, this passage demonstrates that the court focused on the report's description of the race and virtually ignored Dr. Vaughan's independent-medical-examination findings. In doing so, the court of appeals impermissibly weighed the credibility of the evidence and substituted its opinion for that of the board. The evidence of Burroughs's participation in the race was but one component of the evidence supporting the board's benefits determination. By virtually ignoring Dr. Vaughan's assessment and Dr. Tanner's agreement with that assessment, the court of appeals abused its discretion.

{¶ 34} Burroughs argues that the board "ignored the findings of its own medical advisor and ignored the previous finding of Dr. Wolf [sic] that Mr. Burroughs was indeed permanently incapacitated." Burroughs was examined by Dr. Claire Wolfe at the board's request in 2010, within four months after his spinal surgery. At that time, she opined that despite the success of the surgery, Burroughs "would not be able to fulfill all of the requirements of a patrol officer, especially for responding to emergencies and dealing with perpetrators." Contrary to Burroughs's assertion, the board was not required to accept the medical opinion of his treating physician or one of the consultative physicians over the opinion of a different independent medical examiner. *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770, 938 N.E.2d 1028, ¶ 30. And the fact that the record contains medical opinions that contradict Dr. Vaughan's medical opinion is inconsequential. *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, 788 N.E.2d 1053, ¶ 29.

{¶ 35} Finally, Burroughs argues that it is clear that Dr. Vaughan applied an inappropriate standard in evaluating him because her report states, "Apparently he is fully recovered from his cervical decompression and fusion." He contends that her use of the word "apparently" demonstrates that she based her medical opinion entirely on his participation in the Savage Race. However, Burroughs's

argument is unpersuasive. He fails to acknowledge that Dr. Vaughan relied on the results of the physical examination she performed and her review of his job duties in reaching her conclusion that he was no longer disabled. By taking one sentence out of the report and focusing on it, Burroughs misrepresents Dr. Vaughan's medical opinion, which when viewed in the context of the whole report, was unequivocal and was supported by the results of her physical examination.

### Conclusion

{¶ 36} We conclude that the board had no legal duty to conduct a physical-capacity evaluation before terminating Burroughs's disability benefits and that the board's decision was based upon sufficient medical evidence. Accordingly, the court of appeals abused its discretion in granting Burroughs a limited writ of mandamus.

Judgment reversed

and writ denied.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Dagger, Johnston, Miller, Ogilvie & Hampson, and D. Joe Griffith, for appellee.

Michael DeWine, Attorney General, and John J. Danish and Mary Therese J. Bridge, Assistant Attorneys General, for appellants.

_____