[Cite as *State ex rel. Powell v. Ohio Pub. Emps. Retirement Sys.*, 2021-Ohio-920.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Michael Ray Powell, Jr., | : | |
| Relator, | : | |
| v. | : | No. 19AP-600 |
| Ohio Public Employees Retirement System, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

D E C I S I O N

Rendered on March 23, 2021

**On brief:** *Law Offices of Gary A. Reeve,* and *Gary A. Reeve,* for relator.

**On brief:** *Dave Yost,* Attorney General, *Samuel A. Peppers, III,* and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Michael Ray Powell, Jr., brings this original action seeking a writ of mandamus ordering respondent, Ohio Public Employees Retirement System ("OPERS"), to vacate its order denying relator's application for disability benefits, and grant such benefits retroactive to the date of application. Relator also requests that OPERS pay relator's reasonable attorney fees and costs incurred in pursuing this mandamus action.

{¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate considered the action on its merits and issued a decision that includes findings of fact and conclusions of law, which is appended to this decision. The magistrate determined that OPERS did not abuse

its discretion in denying relator's application for disability benefits and has recommended that this court deny the request for a writ of mandamus.

{¶ 3}   Relator has timely filed objections to the magistrate's decision.  Specifically, relator contends that (1) the magistrate "failed to address relator's argument that the Ohio Supreme Court's 'any evidence' standard must be interpreted as encompassing only evidence that passes the normal standards for reliability and trustworthiness"; and (2) the magistrate "failed to address that OPERS did not carry out its fiduciary duty to Powell when it ignored the unreliability and lack of trustworthiness of the Independent Medical Examination ("IME") reports of its appointed physicians."  (Oct. 8, 2020 Objs. at 1.)

{¶ 4}   Because relator has filed objections, we must independently review the record and the magistrate's decision "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).

{¶ 5}   "Mandamus is the appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Hudson v. Ohio Pub. Emp. Retirement Sys.*, 10th Dist. No. 10AP-904, 2011-Ohio-5362, ¶ 64.  *See also State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219. Because there is no statutory appeal from the board's determination that relator is not entitled to disability benefits, mandamus is an appropriate remedy.  *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.,* 127 Ohio St.3d 257, 2010-Ohio-5770, ¶ 12, citing *State ex rel. Pipoly* at ¶ 14.  *See also Hudson* at ¶ 64.

{¶ 6}   A relator seeking a writ of mandamus must establish: "[1] a clear legal right to the relief requested, [2] that PERS has a clear legal duty to provide the requested relief, and [3] that relator has no plain and adequate remedy in the ordinary course of the law." *Hudson* at ¶ 65. Further, "[t]o be entitled to the requested writ of mandamus, relator must establish that the board abused its discretion by denying [his] request for disability benefits." *Id.  See also State ex rel. Mallory v. Pub. Emp. Retirement Bd.*, 82 Ohio St.3d 235, (1998).   An abuse of discretion connotes a board decision that is unreasonable, arbitrary, or unconscionable.  *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 220 (1983).  However, "[w]hen there is some evidence to support the board's decision, an abuse of discretion has not been shown." *Hudson* at ¶ 65.  Thus, as long as some evidence supports the decision of the board, this court will not disturb it.  *See State ex rel. Marchiano v. School*

*Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, ¶ 20-21, citing *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, ¶ 9. Furthermore, "the presence of contrary evidence is immaterial, so long as the 'some evidence' standard has been met." *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, ¶ 29. "Only if the board's decision is not supported by *any* evidence will mandamus lie." (Emphasis sic.) *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.,* 144 Ohio St.3d 367, 2015-Ohio-3807, ¶ 17.

{¶ 7} Here, the magistrate properly determined that because there is some evidence in the record to support the board's denial of relator's application for disability benefits, relator is not entitled to mandamus relief. Specifically, the magistrate correctly identified the reports of Drs. Steiman and Mankowski as being "some evidence" upon which the board properly relied in denying relator's application for disability benefits. Furthermore, we find the file reviews of the medical evidence conducted by Managed Medical Review Organization ("MMRO") and Dr. Mast are also "some evidence" upon which the board properly relied. Thus, we agree with the magistrate's finding that there was "some evidence" before the board to support a finding that relator is not permanently disabled from his last public employment position, and therefore the board did not abuse its discretion in denying relator's disability benefits application.

{¶ 8} Turning to relator's objections, we find meritless relator's argument that the reports of Drs. Steiman and Mankowski should not have been considered by the board because they should have been excluded as being confusing, misleading, and unfairly prejudicial to relator pursuant to Evid.R. 403. Relator has cited no authority for his proposition that the rules of evidence are applicable to determinations undertaken by the board pursuant to R.C. 145.35, nor was this court able to find any such authority. Therefore, we reject in toto this argument of relator.

{¶ 9} Furthermore, the record indicates that both Drs. Steiman and Mankowski are board-certified in neurology and their reports are probative of the matter at issue, i.e., whether relator was permanently disabled so as to entitle him to disability benefits. Their IME reports are precisely what the board is required to consider pursuant to R.C. 145.35(E).

{¶ 10} Moreover, each of the IME reports demonstrated an understanding of the claimant's duties as a Highway Technician for the Ohio Department of Transportation

("ODOT"), and each of the IME reports reflected consideration of those duties in the context of reaching an opinion as to whether the claimant was permanently disabled. As set forth in the findings of fact, these IME reports are detailed in their discussion of the finding from the physical exams. Drs. Steiman and Mankowski each examined relator and each concluded that relator was not permanently disabled. Thus, notwithstanding relator's contention that Dr. Steiman's report was incomplete and lacked detail and that Dr. Mankowski's report was prejudicial as being "speculative," the reports of Drs. Steiman and Mankowski were properly considered by the board and constituted some evidence in support of its decision to deny the claimant's application. Relator's first objection is overruled.

{¶ 11} We likewise find meritless relator's contention that the board failed to meet its fiduciary duty to relator by not excluding the IME reports of Drs. Steiman and Mankowski based on Evid.R. 403. As previously set forth, there is no authority for relator's proposition that the rules of evidence apply to this matter in any event. Furthermore, while it is accurate that OPERS has a fiduciary duty "to administer each individual's plan for the benefit of the participant or its designated beneficiary," *Poliseno v. Mitchell*, 10th Dist. No. 09AP-1002, 2010-Ohio-2615, ¶ 22, in this case there is no support in the record for relator's contention that the board breached this fiduciary duty by properly considering the IME reports of Drs. Steiman and Mankowski. Relator's second objection is overruled.

{¶ 12} Having overruled both of relator's objections, and having conducted an examination of the magistrate's decision and an independent review of the record pursuant to Civ.R. 53, we find that the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that relator is not entitled to a writ of mandamus. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

KLATT and MENTEL, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Michael Ray Powell, Jr.,        :

        Relator,                                        :

v.                                                            :                      No.  19AP-600

Ohio Public Employees Retirement System,  :                      (REGULAR CALENDAR)

        Respondent.                                  :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 1, 2020

*Law Offices of Gary A. Reeve,* and *Gary A. Reeve,* for relator.

*Dave Yost,* Attorney General, *Samuel A. Peppers, III,* and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS

**{¶ 13}** Relator, Michael Ray Powell, Jr., seeks a writ of mandamus ordering respondent, Ohio Public Employees Retirement System ("OPERS"), to vacate its order denying relator's application for disability benefits, and grant such benefits retroactive to the date of application.  Relator also asks that OPERS pay relator's reasonable attorney's fees and costs incurred in pursuing this mandamus action.

Findings of Fact:

**{¶ 14}** 1. Relator worked as a Highway Technician for the Ohio Department of Transportation ("ODOT").

{¶ 15} 2. On July 10, 2015, relator underwent neck surgery consisting of a cervical discectomy, cervical fusion, and interior plating.

{¶ 16} 3. Relator returned to work after his neck surgery, but on October 28 or 29, 2015, he fell from a ladder at work landing on his head, neck, and the right side of his body.

{¶ 17} 4. The next day relator suffered from headaches, neck pain, right shoulder pain, and sought treatment in a hospital emergency room. He was diagnosed with a concussion and discharged to return home.

{¶ 18} 5. Relator returned to work until December 1, 2015 (according to a medical report submitted with his disability application) or November 3, 2015 (according to a later medical report), when he stopped working on medical advice.

{¶ 19} 6. Relator submitted his disability benefit application on November 30, 2017.

{¶ 20} 7. In support of his disability benefit application, relator submitted the report of a treating physician, Steven E. Katz, M.D., assessing the following conditions:

> [One] Trigeminal neuralgia right
> [Two] Dysesthesia right trigeminal, divisions 1 through 3
> [Three] Subjective vision disturbance [***]
> [Four] Photosensitivity
> [Five] Blurred vision
> [Six] Chronic daily headache
> [Seven] Migraine with aura and without status migrainosus,
> not intractable
> [Eight] Nuclear sclerosis of both eyes
> [Nine] OSA (obstructive sleep apnea)
> [Ten] Essential hypertension

{¶ 21} 8. Relator also submitted a report prepared by W. Jerry Mysiw, M.D., prepared in conjunction with ODOT's formal position description for relator's job duties and assessing relator's conditions in light of OPERS' disability standard:

[One] Member Complaints:

Migraine, neck and shoulder pain

[Two] Member Symptoms:

Pain scale 6-6 in neck and shoulders radiates to RUL. Trouble falling/staying asleep, wakes frequently with night sweats. Poor balance, near falls. Photo-sensitivity. Neurocognitive fatigue. Memory loss, inattention and slow information processing impaired focus, impaired, divided and slowed processing speed. Executive dysfunction. Irritability, low frustration tolerance, anger control difficulty and decreased initiation or motivation. *Depressed* mood, irritability, low motivation and social withdrawal. Anxiety, Panic episodes.

[Three] Current Medications:

Lorazepam 1 mg. Hydrocodone-Acetaminophen 10/325. Lunesta 3 mg. Lidocaine 4% solution.

[Four] Laboratory and/or Diagnostic Findings:

Last labs 2015

11/14/17: MRI BRAIN WITHOUT CONTRAST: IMPRESSION: No acute intracranial abnormality or mass effect.

[Five] Historical Treatment/Care Plan

Medication management
Brain MRI

[Six] Current Treatment/Care Plan:

Referral to Sheital Bavishi, DO for acupuncture for post concussive Cervicogenic daily migraines, neck pain and med back pain. Medication management[.]

[Seven] Has member shown medical improvement with Current Treatment/Care Plan? Yes.

If yes, indicate level of improvement: Fair.

[Eight] Prognosis for recovery from disabling condition(s): Fair at present.

{¶ 22} Based upon assessments of relator's ability to perform various lift/pull/carry/push and climbing tasks, Dr. Mysiw concluded that relator was "permanently disabled from his last public employment position."

{¶ 23} 9. OPERS, pursuant to its contract with Managed Medical Review Organization ("MMRO"), scheduled relator for an independent medical evaluation with MMRO's evaluating physician, Gerald Steiman, M.D. Dr. Steiman completed his independent medical evaluation of relator on February 28, 2018, including a physical examination, a review of relator's medical records, and a review of ODOT's job description. On March 14, 2018, Dr. Steiman produced a report with the following assessment:

> **JOB ACTIVITY:** I reviewed Mr. Powell's job description and worker characteristics including the job duties and minimal acceptable characteristics. Mr. Powell indicates he was a Highway Technician 3C/M who would operate heavy equipment. At the advice of Dr. Bridger, he has not been released to return to work since November 3, 2015 due to a diagnosis of post-concussion syndrome.
>
> **COMPLAINTS:** Mr. Powell indicates he has two types of headaches. One type is a migraine headache. The pain begins behind an eye, more so on the right than the left. It is a sharp, throbbing pain with photophobia, which occurs 1-2 times a month. Whenever he has the pain he uses the lidocaine nasal spray which aborts the headache within minutes. A second type of headache Mr. Powell calls a cervicogenic headache. It is a pain that begins in the back of his neck and upper back. It spreads to involve the back and sides of his head. This is a constant waxing and waning pressure/burning sensation. It may occur 2-3 times a week and may last several days at a time. He cannot recall going one day totally headache free with respect to his cervicogenic headaches. Associated with this headache is a "white" noise. If the headache becomes severe he might have nausea or light sensitivity.
>
> Mr. Powell further complains of a constant double vision which he describes as a halo. He describes monocular double vision. When he closes the left eye and looks through the right eye, he has a halo/double vision. When he closes the right eye

and looks through the left eye, his vision is clear. When he looks through both eyes, his vision is characterized by a halo. Mr. Powell indicates he has an off balance sensation. He has ringing in his ears with slowed thinking and he is easily confused.

* * *

**REVIEW OF SYSTEMS:** The neurological review of systems is positive for headache, confusion, personality change, double vision, decreased hearing, arm weakness, short attention span, dizziness, forgetfulness, facial numbness/tingling, impulsiveness, speech difficulty, night vision difficulty, sleeping difficulty, distractibility, and difficulty walking.

The general health review of systems is positive for weight gain, blurred vision, glasses, ringing in the ears, urinary frequency, dry hair, excessive thirst, seasonal allergies, joint stiffness, chronic pain, difficulty sleeping, and lack of energy. **PAIN PERCEPTION:** Mr. Powell was asked to complete an assessment to document his perception of how his accident and/or injuries have affected his life. Mr. Powell's Pain Disability Questionnaire (PDQ) score of 109 indicates he has a moderate pain-related impairment.

* * *

**MEDICAL RECORD REVIEW:**

* * *

In March 2016, Dr. Rust, a neurologist, noted Mr. Powell fell from a ladder in October 2015 with a possible loss of consciousness. Mr. Powell complained of neck pain radiating to the right 5th digit with numbness on the right side of his face as well as blurred vision in his right eye and light sensitivity. Dr. Rust opined headache, neck pain, visual disturbance, post-concussion syndrome, and possible cervical radiculopathy. Dr. Rust recommended Elavil, Norco, physical therapy, and an optometry referral.

In November 2016, Dr. Katz obtained the history that Mr. Powell fell off a ladder but did not lose consciousness. He was followed by Dr. Bridger at WorkHealth. Dr. Katz diagnosed right trigeminal neuralgia, subjective visual loss, light sensitivity, blurred vision, chronic daily headaches,

migraines, nuclear sclerosis, obstructive sleep apnea, and hypertension.

In October 2017, Dr. Mysiw, a physiatrist, opined Mr. Powell suffered from migraines, cervicogenic headaches, a cognitive deficit, sleep disorder and difficulty controlling his behavior due to a traumatic brain injury, balance disturbances, and a post-concussion syndrome. Dr. Mysiw recommended an MRI of the brain.

Mr. Powell returned to Dr. Bridger on November 7, 2017. He was diagnosed with a cervical-thoracic-right shoulder sprain with head contusion. On November 9, 2017, there is reference to an MRI of the right shoulder. In January 2018, Dr. Mysiw recommended acupuncture.

**EXAMINATION:**

* * *

The cranial nerve exam reveals normal pupils and eye movements. His gaze is conjugate and he does not exhibit nystagmus. He has mild drooping of the right eyelid. When testing his vision, he has monocular right-sided halo/diplopia. specifically, when covering his right eye, his vision is clear and distinct. When covering his left eye, he has a halo or double vision. When looking through both eyes, his vision is characterized by a halo.

Within the cervical spine, a well healed, almost imperceptible scar is noted consistent with his operative history. Diffuse tenderness is noted throughout the cervical paraspinal muscles into the upper thoracic paraspinal region. He does not demonstrate muscle spasm in neutral posture although the cervical range of motion is limited by muscle guarding. Mr. Powell does not exhibit a painful tender or trigger point in the occipital, low cervical, trapezius, or supraspinatus regions. His Spurling signs are negative for nerve root compromise. His facet loading tests are negative for cervical instability. Cervical range of motion is performed with moderate discomfort with extension which Mr. Powell blames on his prior surgery. Mr. Powell demonstrates 35-40 degrees of forward flexion, 10-15 degrees of extension, 15-20 degrees of right and left lateral bending, and 35-40 degrees of rotation to either side.

**DISCUSSION:**

* * *

Mr. Powell presents for an Independent Medical Evaluation with an eligible diagnosis of intractable migraines without aura and without status migrainosus. As noted within the medical record review, Mr. Powell suffers from multiple other medical diagnoses. It is evident that Mr. Powell's migraines are not intractable as he is on treatment which aborts his migraines within a few minutes. Mr. Powell indicates that whenever he has a migraine headache, he takes the Lidoderm nasal spray which aborts his symptom complex within a few minutes. As such, his migraine headaches are neither intractable nor provide a significant limitation in his activities of daily living or occupational pursuits.

* * *

**CONCLUSION:**

* * *

**QUESTION #2:** Per OPERS definition of permanent disability, is the claimant presumably permanently disabled for the performance of their own occupation as a public employee, Highway Technician 3C/M[?] Please provide supporting rationale for your decision of either approval or disapproval of permanent disability.

**ANSWER:** No, when considering the OPERS definition of permanent disability, Mr. Powell is not permanently disabled for the performance of their own occupation as a public employee, Highway Technician 3C/M. The eligible diagnosis of intractable migraine without aura and without status migrainosus is easily controlled with appropriate medication and do not incapacitate him from performing his own occupation. Mr. Powell indicated he has excellent pain relief within minutes of using the Lidocaine nasal spray.

* * *

**QUESTION #5:** If there is objective medical evidence to support disability, please comment on expected treatment, duration, and prognosis.

[**ANSWER:**] No, there is no objective medical evidence to support disability. Mr. Powell's eligible diagnosis is manifested only by subjective complaints/symptoms and not

by objective medical evidence. His subjective complaints are valid and consistent with the eligible diagnosis. There is no evidence of magnification or embellishment.

* * *

**QUESTION #7:** Do the claimant's subjective complaints/symptoms correlate with objective clinical findings? If no, please explain.

**ANSWER:** No, the observed activities/behavior do not correlate with the objective clinical findings because Mr. Powell's eligible diagnosis is characterized by subjective complaints/symptoms without objective clinical findings. The observed activities/behavior do correlate with the eligible diagnosis. His subjective complaints are valid and there is no evidence of magnification or embellishment.

* * *

**QUESTION #9:** In your medical opinion, please elaborate on the claimant's ability or inability to perform their specific job tasks based on the enclosed job description and eligible diagnosis.

[**ANSWER:**] No, there is no credible evidence that Mr. Powell is unable to perform the specific job tasks based on the enclosed job description and eligible diagnosis. Mr. Powell's history, physical exam, and medical record review provide credible evidence that he is capable of performing the requirements of his job activity without limitation or restriction.

{¶ 24} 10. Relator attempted to submit additional records in the form of further assessments by Dr. Mysiw, which OPERS refused to consider because the matter had already been submitted to MMRO for an independent medical review.

{¶ 25} 11. MMRO contacted Dr. Steiman requesting a supplemental report answering an additional question. Based on Dr. Mysiw's description of relator's cervicogenic daily headaches as migraines, Dr. Steiman was asked to consider the cervicogenic migraines described in his reports as migraine headaches for which the

disability question could be answered.  Dr. Steiman issued a letter dated April 4, 2018, stating as follows:

> When considering the diagnosis of cervicogenic headaches and the OPERS definition of permanent disability, Mr. Powell's history, medical record review, and physical examination provide credible evidence he is not disabled from his occupation as a public employee, Highway Technician 3C/M.

{¶ 26} 12. Based on Dr. Steiman's evaluation, MMRO issued an ultimate recommendation that OPERS disapprove relator's application for disability benefits based on a finding of insufficient objective evidence of permanent disability.

{¶ 27} 13. The OPERS board denied relator's application at its May 16, 2018 meeting.

{¶ 28} 14.  Relator submitted an appeal request form seeking further review of his application.

{¶ 29} 15. At OPERS' request, MMRO scheduled another independent medical evaluation for relator with Kenneth Mankowski, D.O.  Dr. Mankowski examined relator and produced a report answering ten specific questions:

> **[Two] Per OPERS definition of permanent disability, is the claimant presumably permanently disabled for the performance of their own occupation as an employee?**
>
> No. Based on the eligible medical conditions of this claim the claimant is not presumed to be permanently disabled from the performance of his job as a Highway Technician 3C/M beginning on the disability application date of 11/30/2017 for a continuous period of at least 12 months. There is simply no credible medical evidence presented to conclude that the claimant is considered permanently disabled as related to the eligible medical conditions of this claim. This conclusion is based on the following:

-Intractable migraines without aura and without status migrainous are episodic and treatable. This type and severity of migraine does not result in permanent disability and would preclude him from performing his job as a Highway Technician 3C/M. It is important to recall, there are no associated neurological deficits or altered awareness.

-None of the treating physicians, Dr. Steiman, or myself reported or described neurological deficits on examination.

-Post concussive cervicogenic headaches as related to traumatic brain injury of this type and severity does not result in permanent disability that would prevent him from performing his public employee job for a period of 12 months from the 11/30/17 date. Again, these headaches were episodic and treatable and not associated with neurological deficits. In my opinion, this condition was self-limiting and resolved within 3 months of the actual injury. This conclusion is based upon the mechanism of injury, the severity of the injury, subjective symptoms, and the known natural history of this condition. There was no objective evidence of this condition at the time of my examination on October 9, 2018. There has been no credible evidence presented to support the presence of this condition.

**[Three] Do you anticipate a clinically significant change in the claimant's disabling condition within 12 months from the members disability application?**

Yes. Based on the type and severity of the condition of intractable migraines without aura and without status migrainous and the natural history of this condition, it is more likely than not that he will improve over this period starting 11/30/17 and beyond. It is expected and probable that the claimant's disabling condition of intractable migraines without aura and without status migrainous will improve resulting in less frequent and less intense symptoms. This improvement is expected to occur within 12 months from the application date of 11/30/2017.

As previously stated, the condition of post concussive cervicogenic headaches as related to traumatic brain injury was self-limiting and resolved within 3 months of the initial injury in October 2015. There is no residual pathology. Any ongoing symptoms are unrelated to this condition, which has resolved.

* * *

**[Seven] Do the claimant's subjective complaints/symptoms correlate with your objective clinical findings? If no, please explain.**

The claimant's subjective complaints are out of proportion to the objective clinical findings. The subjective complaints are out of proportion to the objective clinical findings. The subjective visual symptoms are not correlated with any objective findings on examination. I agree with Dr. Katz wo described the visual disturbances as subjective. It is important to note, that although there are no objective findings that correlate with the subjective complaint of headache, this is not uncommon with this type of diagnosis.

* * *

**[Nine] In your medical opinion, please elaborate on the claimant's ability or inability to perform their specific job tasks based on the enclosed job description and eligible diagnosis(es).**

In my opinion, the condition of intractable migraines without aura and without status migrainous is episodic and treatable and not associated with any neurological deficits which would preclude him from performing job tasks as described by the enclosed job description. Specifically, the migraines are not associated with any of the following: aura, vision loss, focal neurological deficits, intractable emesis or altered awareness.

The condition of post concussive cervicogenic headaches as related to traumatic brain injury was self-limiting and resolved without residual pathology. When the condition did exist, it was not associated [with] neurological deficits and did not interfere with the claimant's ability to perform his specific job tasks.

**[Ten] If applicable and the applicant is now permanently disabled from their public position, please elaborate as to what has changed since his previous IME/PE that this has now disabled him from his public position.**

In my opinion, the claimant is not permanently disabled from their public position.

(Emphasis sic.)

{¶ 30} 16. In support of his appeal, relator submitted an additional report from Dr. Mysiw.

{¶ 31} 17. MMRO again recommended denial of relator's disability application, and the OPERS board upheld denial of disability benefits at its November 14, 2019 meeting.

Discussion and Conclusions of Law:

{¶ 32} Mandamus is the appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body. *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.,* 127 Ohio St.3d 257, 2010-Ohio-5770, ¶ 12, citing *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14. A clear legal right to a writ of mandamus exists when an agency is found to have abused its discretion by entering a decision that is not supported by some evidence. *State ex rel. Schaengold v. Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, ¶ 19. A decision by a retirement system board will not be disturbed simply because the presence of contrary evidence, as long as the "some evidence" standard has been met. *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, ¶ 29. "Only if the board's decision is not supported by *any* evidence will mandamus lie." (Emphasis sic.) *State ex rel. Woodman v. Ohio Public Emps. Retirement Sys.,* 144 Ohio St.3d 367, 2015-Ohio-3807, ¶ 17.

{¶ 33} A review of the medical reports furnished to OPERS makes clear that, while the reports do not all agree in their conclusions, there is some evidence to support the board's decision to deny relator's disability benefits application.

{¶ 34} Dr. Steiman concluded, as set forth at length above, that relator's migraines were not untreatable because his Lidoderm nasal spray provided relief within a few

minutes. Dr. Steiman expressly concluded that there was no current disabling diagnosis. Dr. Steiman also expressly concluded that there was no objective medical evidence to support disability and, thus, no credible evidence to support a conclusion that relator was unable to perform the job tasks in his ODOT job description.

{¶ 35} Dr. Mankowski likewise concluded that relator was not permanently disabled, that relator's migraine headaches would improve over time, and the condition of post-concussion cervicogenic headaches was self-limiting and would have resolved within three months of the initial injury. Dr. Mankowski observed no residual pathology of ongoing symptoms.

{¶ 36} The board is not required to accept the views of any particular doctor or doctors, or give greater weight to the applicant's treating physicians. Relator's argument, therefore, that the board failed to properly consider his own treating physician's conclusions that he was disabled is not conclusive. *Pipoly* at ¶ 24-26. Nor did Drs. Steiman and Mankowski fail to fully consider the two forms of headaches experienced by relator. "[S]ubjective complaints are not conclusive of disability, and objective medical evidence is still relevant to a determination of the severity of the condition." *State ex rel. VanCleave v. School Emps. Retirement Sys.,* 120 Ohio St.3d 261, 2008-Ohio-5377, ¶ 47; *see also State ex rel. Morgan v. State Teachers Retirement Bd.,* 121 Ohio St.3d 324, 2009-Ohio-591, ¶ 24.

{¶ 37} Both on initial review and after relator filed his appeal from the initial denial, there was some evidence before the board to support a finding that relator is not permanently disabled from his last public employment position. For these reasons, the magistrate concludes that respondent did not abuse its discretion in denying relator's disability benefits application, and it is the magistrate's decision that this court deny

relator's request for a writ of mandamus. As a result, relator's application for fees and costs is also denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).