[Cite as *State ex rel. Oldham v. Ohio Police & Fire Retirement Fund*, 2025-Ohio-5232.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Peter Drake Oldham, Jr., | : | |
| Relator, | : | |
| v. | : | No. 23AP-688 |
| Ohio Police & Fire Retirement Fund, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

D E C I S I O N

Rendered on November 20, 2025

**On brief:** *Eric Fink*, for relator.

**On brief:** *Dave Yost*, Attorney General, *Henrique A. Geigel*, and *Lisa A. Reid*, for respondent.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Peter Drake Oldham, Jr., seeks a writ of mandamus ordering respondent, Ohio Police & Fire Pension Fund (sometimes "OPFPF"), to comply with the laws of the State of Ohio; to calculate relator's annual average retirement income from the OPFPF fund ("the fund") using a three-year highest average contribution instead of a five-year highest average contribution pursuant to R.C. 742; and to reimburse relator for his lost income as a result of the breach of contract.

{¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate considered the action on its merits and issued a decision that includes findings of fact and conclusions of law, which is appended hereto. The magistrate determined that relator is not entitled to receive the preferred three-year statutory calculation set forth in R.C. 742 because he failed to

transfer his OPERS service credit to respondent before the July 2, 2013, deadline, as required by R.C. 742.37(C)(1) and, thus, lacked the necessary 15 years of service credit required to utilize the preferred three-year calculation. Thus, the magistrate has recommended that this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed an objection to the magistrate's decision, stating "that the Magistrate did not properly apply the clear language of R.C. 742.21, added requirements not found in [the] Revised Code, and in so doing violated the separation of powers between the judicial and legislative branches of government[.]" (Relator's Obj. at 2.) Because relator has filed an objection, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Relator has not objected to the factual findings of the magistrate and upon our review we find no error pertaining to same. We thus turn to whether the magistrate has appropriately applied the law in this matter.

{¶ 4} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983). The burden is on relator to establish all three elements by clear and convincing evidence. *State ex rel. Mars Urban Solutions, L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2018-Ohio-4668, ¶ 6.

{¶ 5} To be entitled to a writ of mandamus, the relator must establish that the retirement board abused its discretion by denying his request for retirement benefits. *State ex rel. Domhoff v. Ohio Pub. Emp. Retirement Sys. Bd.*, 2014-Ohio-3688, ¶ 14; *State ex rel. Hudson v. Ohio Pub. Emp. Retirement Sys.*, 2011-Ohio-5362, ¶ 65 (10th Dist.). An abuse of discretion connotes a board decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. Shisler v. Ohio Pub. Emp. Retirement Sys.*, 2009-Ohio-2522, ¶ 11. It is well-settled that respondent has not abused its discretion if there is "some evidence" to support its determination. *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.*, 2007-Ohio-3760, ¶ 19; *Hudson* at ¶ 65. Thus, as long as some evidence supports the decision of the retirement board, this court will not disturb it. *See State ex*

*rel. Marchiano v. School Emps. Retirement Sys.*, 2009-Ohio-307, ¶ 20-21, citing *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 2007-Ohio-6667, ¶ 9. Furthermore, "the presence of contrary evidence is immaterial, so long as the 'some evidence' standard has been met." *State ex rel. Am. Std., Inc. v. Boehler*, 2003-Ohio-2457, ¶ 29. "Only if the board's decision is not supported by *any* evidence will mandamus lie." (Emphasis sic.) *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 2015-Ohio-3807, ¶ 17.

{¶ 6} This case involves the construction and application of R.C. 742.21 (service credit for membership in state or municipal retirement system); R.C. 742.37(C)(1) (rules for disbursement of benefits and pensions); and Adm.Code 742-5-07(I) (service credit purchases and transfers). We begin by observing that courts lack authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation or liberal or narrow constructions. *State ex rel. Massie v. Gahanna-Jefferson Pub. Schools Bd. of Edn.*, 76 Ohio St.3d 584, 588 (1996). Rather, a court's duty is to give effect to the words used in a statute, not to delete or insert words. *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 10. If the words in a statute are " 'free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.' " *State v. Hairston*, 2004-Ohio-969, ¶ 12, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. In short, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶ 7} Courts "apply the rules of statutory construction to administrative rules as well." *McFee v. Nursing Care Mgt. of Am., Inc.*, 2010-Ohio-2744, ¶ 27, citing *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 54 (1979) (finding the "ordinary meaning rule" of statutory construction applies equally to administrative rules). Thus, " '[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' We must read undefined words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Turner v. Eberlin*, 2008-Ohio-1117, ¶ 14 (2008), quoting *Morning View Care Ctr.-Fulton v. Dept. of Human Servs.*, 2002-Ohio-2878, ¶ 36 (10th Dist.).

{¶ 8} A review of the relevant statutes and code sections shows that under R.C. 742.21(D)(1), relator is not entitled to service credit for his time working at a job covered by OPERS unless and until the service credit is *transferred* to the OPFPF. Both R.C. 742.21(D)(1) and Adm.Code 742-5-07(I) are clear and unambiguous in this regard and require that the *actual monies be transferred*. In fact, even the interest on the contributions made to OPERS must be transferred to affect a transfer of service credit. *See* R.C. 742.21(D)(1)(c).

{¶ 9} Furthermore, as clearly set forth in R.C. 742.37(C)(1), in order to be considered in determining relator's average annual salary, the service credit earned under OPERS was required to have been transferred prior to January 2, 2013. Importantly, Adm.Code 742-5-07(I) further makes it clear that the onus is on the member covered by the OPFPF to initiate the transfer of service credit. There is nothing ambiguous about the requirements set forth in the foregoing statutes and administrative code and they must therefore be applied as written to the facts before us.

{¶ 10} In this case, the record is clear—indeed, it is undisputed—that relator did not transfer his service credits earned while covered under OPERS until *after* July 2, 2013. Because of this, he had less than 15 years of service credit within the OPFPF as of July 2, 2013. Therefore, pursuant to R.C. 742.37(C)(1), his average annual salary was properly determined using five years of contributions.

{¶ 11} In sum, OPFPF did not err in determining that relator's annual average retirement income from the OPFPF fund should be calculated using of a five-year highest average contribution rather than by using a three-year highest average contribution. Therefore, relator has not shown it has a clear legal right to a writ of mandamus. Accordingly, we overrule relator's objection.

{¶ 12} Based on the foregoing, we overrule relator's objection to the magistrate's decision. Having conducted an examination of the magistrate's decision and an independent review of the evidence pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that relator is not entitled to a writ of mandamus.

{¶ 13} Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny relator's request for a writ of mandamus.

*Objection overruled*;
*writ of mandamus denied.*

BOGGS and LELAND, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Peter Drake Oldham, Jr., | : | |
| Relator, | : | |
| v. | : | No.  23AP-688 |
| Ohio Police & Fire Retirement Fund, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 9, 2025

*Eric Fink*, for relator.

*Dave Yost,* Attorney General, *Henrique A. Geigel*, and *Lisa A. Reid*, for respondent.

IN MANDAMUS

{¶ 14}  Relator, Peter D. Oldham, Jr., has filed this original action requesting that this court issue a writ of mandamus that orders respondent, Ohio Police & Fire Pension Fund (sometimes "OPFPF"), to comply with the laws of the State of Ohio; to calculate relator's annual average retirement income from the OPFPF fund ("the fund") using a three-year highest average contribution instead of a five-year highest average contribution pursuant to R.C. 742; and to reimburse relator for his lost income as a result of the breach of contract.

Findings of Fact:

{¶ 15}  1. OPFPF is a public retirement agency that administers the fund.

{¶ 16}  2. Relator is a member of the fund.

{¶ 17}  3. On November 13, 2023, relator filed a petition for writ of mandamus. In his petition, relator alleges the following: (1) he was eligible for membership in the fund for his time spent working for the Cuyahoga Falls, Ohio, Police Department from January 7, 1997, until March 30, 2008; (2) he was eligible for membership in the Ohio Public Employee Retirement System ("OPERS") for his time spent working for the Ohio Peace Officer Training Academy from March 31, 2008, until May 25, 2013; (3) his commission was held by the Canal Fulton, Ohio, Police Department from April 1, 2008, until May 9, 2009, where he also received OPERS credit; (4) he was commissioned by the Silver Lake, Ohio, Police Department from May 18, 2009, until January 25, 2015, and he was eligible for membership in the fund for his time spent working for the Silver Lake, Ohio, Police Department from May 19, 2013, until January 25, 2015.

{¶ 18}  4. The record contains records of respondent's communications with relator and others on the subject matter at hand. On October 26, 2012, relator spoke with respondent about his returning to fund-covered employment and was told that he could transfer OPERS to the fund, but it is not a short process. On June 3, 2013, respondent answered relator's general questions regarding the transfer of OPERS time. On June 5, 2013, respondent advised relator to start with OPERS for purchasing and transferring time to the fund. Several other communications between relator and respondent occurred from February 2014 to April 2014 with regard to the transfer of OPERS to the fund.

{¶ 19} 5. On August 28, 2013, OPERS sent a letter to relator that included his member contribution history and a transfer information form to be returned to OPERS.

{¶ 20} 6. On October 24, 2013, relator signed a member service credit transfer certification, and on November 21, 2013, OPERS completed an employer service credit transfer certification.

{¶ 21} 7. On January 7, 2014, OPERS indicated it was forwarding a warrant for relator, which represented the appropriate OPERS monies to be transferred into the fund.

{¶ 22} 8. In his petition, relator further alleges the following: (1) he was eligible for membership in the fund for his time spent working for the Kent, Ohio, Police Department from January 26, 2015, until July 24, 2023; (2) he retired through the fund on July 25, 2023; (3) he has never collected any pension benefits from OPERS or withdrawn his separate benefits from OPERS; (4) his OPERS benefits were transferred to the fund; (5) pursuant to R.C. 742.21, his time in OPERS counts as service credit in the fund, and he has over 25 years of total service credit; (6) based on his employment history, he accumulated over 15 years of service credit prior to July 2, 2013; thus, he has a clear legal right, pursuant to R.C. 742.37, to have his average salary based upon his three highest years of income; (7) in May 2023, the fund informed him that it had calculated his retirement pension benefit based upon his five highest years of income, which was improper, unlawful, an abuse of discretion, and arbitrary; and (8) the relationship between relator and respondent is based upon a contract governed by R.C. 742 and the Ohio Administrative Code, and the fund has breached that contract by not paying relator the monthly retirement stipend he is due based upon the formulas and rules established by the Ohio Revised Code and Ohio Administrative Code.

{¶ 23} 9. At some point, respondent informed relator that his final average salary would be determined using five years of contributions. Relator contacted respondent and requested reconsideration that his final average salary be determined using three years of contributions instead of five years.

{¶ 24} 10. On August 18, 2022, respondent sent a letter to relator denying his request to reconsider its determination. It is this determination that forms the basis for the current mandamus action. In the letter, respondent indicated the following: (1) R.C. 742.37(C)(1) directs that, if as of July 2, 2013, the member had 15 or more years of service credit, the average annual salary shall be determined using 3 years of contributions; if, as of that date, the member had less than 15 years of service credit, the average annual salary shall be determined using 5 years of contributions; (2) relator had 11.293 years of service credit with the fund; (3) relator left service within the fund in 2008 and was employed within OPERS thereafter; (4) in late May 2013, relator returned to employment within the fund; (5) relator signed a certification for the transfer of OPERS funds into the fund in October 2013, and certification was completed in November 2013, with the transfer of service credit occurring in January 2014; and (6) thus, because relator did not have 15 or more years of service credit with the fund on July 2, 2013, the fund is required by statute to determine the average annual salary using 5 years of contributions.

{¶ 25} 11. In June 2023, relator submitted his service retirement application, the receipt of which respondent acknowledged on June 14, 2023. Respondent thereafter calculated relator's average annual salary based upon five years of contributions instead of three years of contributions. On August 14, 2023, relator was informed that his first benefit payment would be transmitted to his financial institution.

{¶ 26} 12. After relator filed his petition for writ of mandamus on November 13, 2023, the parties each submitted their own record of evidence.

{¶ 27} 13. On May 20, 2024, respondent filed a motion to strike relator's submitted record of evidence. Respondent argues that relator's submitted record was not certified pursuant to Loc.R. 13(G), and relator's November 13, 2023, and May 15, 2024, affidavits included in his submitted record were not before respondent at the time of its August 18, 2022, determination.

{¶ 28} 14. On April 4, 2025, relator filed a motion for status conference and/or submitting case for mediation in order to pursue resolution.

Conclusions of Law:

{¶ 29} The magistrate recommends that this court deny relator's petition for writ of mandamus.

{¶ 30} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 31} To be entitled to a writ of mandamus, the relator must establish that the retirement board abused its discretion by denying his request for disability benefits. *State ex rel. Hudson v. Ohio Pub. Emp. Retirement Sys.*, 2011-Ohio-5362, ¶ 65 (10th Dist.). An abuse of discretion connotes a board decision that is unreasonable, arbitrary, or unconscionable. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 220 (1983). However, "[w]hen there is some evidence to support the board's decision, an abuse of discretion has not been shown." *Hudson* at ¶ 65. Thus, as long as some evidence supports the decision of

the retirement board, this court will not disturb it. *See State ex rel. Marchiano v. School Emps. Retirement Sys.*, 2009-Ohio-307, ¶ 20-21, citing *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 2007-Ohio-6667, ¶ 9. Furthermore, "the presence of contrary evidence is immaterial, so long as the 'some evidence' standard has been met." *State ex rel. Am. Std., Inc. v. Boehler*, 2003-Ohio-2457, ¶ 29. "Only if the board's decision is not supported by *any* evidence will mandamus lie." (Emphasis sic.) *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 2015-Ohio-3807, ¶ 17.

> R.C. 742.21 provides, in pertinent part:
>
> (A) As used in this section and sections 742.211 to 742.214 of the Revised Code:
>
> (1) "Full-time service" has the meaning established by rule of the board of trustees of the Ohio police and fire pension fund.
>
> (2) "Military service credit" means credit for service in the armed forces of the United States purchased or obtained from the fund, the Cincinnati retirement system, or a non-uniform retirement system.
>
> (3) "Non-uniform retirement system" or "non-uniform system" means the public employees retirement system, school employees retirement system, or state teachers retirement system.
>
> (B) Unless section 742.212 of the Revised Code applies and except as provided in divisions (G) and (I) of this section, in computing the pension and benefits payable under section 742.37 or 742.39 of the Revised Code, the Ohio police and fire pension fund shall give a member of the fund who is in the active service of a police or fire department, is not receiving a pension or benefit payment from the fund, and is not a participant in the deferred retirement option plan established under section 742.43 of the Revised Code full credit for service credit earned for full-time service as a member of the Cincinnati retirement system or purchased or obtained as military service credit . . .
>
> . . .

(D) . . . [I]n computing the pension and benefits payable under section 742.37 or 742.39 of the Revised Code, the fund shall give a member of the fund who is in the active service of a police or fire department, is not receiving a pension or benefit from the fund, has contributions on deposit with a non-uniform retirement system, and is not a participant in the deferred retirement option plan established under section 742.43 of the Revised Code full credit for service credit earned for full-time service as a member of the non-uniform system or service credit purchased or obtained as military service credit if both of the following occur:

(1) The non-uniform system transfers to the fund, for each year of service, the sum of the following:

(a) The amount, contributed by the member or, in the case of military service credit, paid by the member, that is attributable to that service;

(b) An amount equal to the lesser of the amount contributed by the employer to the non-uniform system for the year of service or the amount that would have been contributed by the employer for the year of service had the member been employed by the member's current employer as a member of a police or fire department at the time the credit was earned;

(c) Interest on the amounts specified in divisions (D)(1)(a) and (b) of this section from the last day of the year for which the service credit in the non-uniform system was earned or in which military service credit was purchased or obtained to the date the transfer is made.

. . .

On receipt of a request from the member, the appropriate non-uniform system shall make the transfer specified in division (D)(1) of this section. Interest shall be determined in accordance with division (H) of this section.

R.C. 742.21.

R.C. 742.37(C)(1) provides, in pertinent part:

(C) Unless the board acts under section 742.161 of the Revised Code, members of the fund who have not elected to receive

benefits and pensions from a police relief and pension fund or a firemen's relief and pension fund in accordance with the rules of the fund in force on April 1, 1947, shall receive pensions and benefits in accordance with the following provisions:

(1) . . . Upon notifying the board in writing of the election, the member shall receive an annual pension, payable in twelve monthly installments, in an amount equal to a percentage of the member's average annual salary. If, as of July 2, 2013, the member had fifteen or more years of service credit, the average annual salary shall be determined using three years of contributions. If, as of that date, the member had less than fifteen years of service credit, the average annual salary shall be determined using five years of contributions.

R.C. 742.37(C)(1).

Ohio Adm.Code 742-5-07(I) provides, in pertinent part:

(I) To initiate the transfer of eligible service credit to OP&F under section 742.21 of the Revised Code, the member shall initiate the request with the transferring retirement system. Within a reasonable time from OP&F's receipt of the ledger of contributions and the employer address from the transferring system, OP&F will send a transfer packet to the member containing a certification to be completed and signed by the member and a certification to be completed by the employer where the service credit that is being transferred was earned. The certification forms should be returned together to OP&F. Upon receipt of this information, OP&F will then review the certifications and ledger information and notify the transferring system of the eligible service credit that should be transferred pursuant to section 742.21 of the Revised Code. In the event that the transferring system transfers monies to OP&F without OP&F's review and approval, OP&F reserves the right to reject service credit that does not meet the criteria for "full-time," as outlined in this rule.

Adm.Code 742-5-07(I).

{¶ 32} In the present case, relator first argues that, pursuant to R.C. 742.37(C)(1), once a member of the fund announces his or her retirement date, the fund is able to calculate the member's retirement income based upon the following four factors: (1) the

member's total number of years of service credit; (2) the member's number of years of service credit accumulated prior to July 3, 2013; (3) depending upon the member's number of years of service credit earned prior to July 3, 2013, the average annual income of the member's three (or five) highest years of income; and (4) the percentage multiplier dictated by statute.

{¶ 33} With regard to the first factor, relator points out that in calculating the total number of years of service credit, in addition to the number of years the member was eligible in the fund, members also gain service credit for years contributing to other retirement systems, including OPERS. In this case, relator indicates he has over 21 years in the fund and over 5 years in OPERS, for a total service credit of 26 years and 6 months. The parties do not dispute this number.

{¶ 34} It is the calculation with regard to the second factor upon which the parties disagree and is the subject of the present action. This factor required respondent to determine the member's number of years of service credit accumulated prior to July 3, 2013. Pursuant to R.C. 742.37(C)(1), a member who has obtained at least 15 years of service credit prior to July 3, 2013, will have the member's pension benefit calculated based upon the member's 3 highest years of income while a member who has not obtained 15 years of service credit prior to July 3, 2013, will have the member's pension benefit calculated based upon the member's 5 highest years of income. Relator asserts that, as of July 3, 2013, he had accumulated 16 years and 5 months of total service credit (January 7, 1997, to July 2, 2013). However, relator objects to respondent's decision to ignore his earned service credit with OPERS for the purpose of calculating his service credit earned prior to July 3, 2013. Relator points out that respondent's determination requires the averaging of his 5 highest

years of income instead of just 3e, resulting in relator losing approximately $400 per month in pension benefits.

{¶ 35} Relator argues that respondent is required to grant credit to members who have earned service credit in certain retirement systems, pursuant to the following language in R.C. 742.21(D): "the fund shall give a member of the fund . . . credit for service credit earned for full-time service as a member of the non-uniform system or service credit purchased or obtained as military service credit . . . ." Relator points out that R.C. 742.21(A)(3) provides that " '[n]on-uniform retirement system' or 'non-uniform system' means the public employees retirement system, school employees retirement system, or state teachers retirement system." Thus, relator asserts, OPERS is a non-uniform system, and R.C. 742.21(D) requires respondent to grant relator service credit for time spent in OPERS. Relator contends that although respondent agrees with this interpretation when it credited his time as a member of OPERS for purposes of calculating overall length of service, it inexplicably applies a different interpretation of "service credit" when calculating whether a member has 15 years of service credit prior to July 3, 2013.

{¶ 36} Respondent counters that relator is not entitled to receive the preferred 3-year statutory calculation because he failed to transfer his OPERS service credit to respondent before the July 2, 2013, deadline, as required by R.C. 742.37(C)(1) and, thus, lacked the necessary 15 years of service credit required to utilize the 3-year calculation. Respondent points to the language in R.C. 742.21(D), which provides that, "in computing the pension and benefits payable under section 742.37 or 742.39 of the Revised Code, the fund shall give a member of the fund who is in the active service of a police or fire department, . . . [and who] has contributions on deposit with a non-uniform retirement

system, . . . full credit for service credit earned for full-time service as a member of the non-uniform system . . . if . . . [t]he non-uniform system transfers to the fund, for each year of service . . . [t]he amount, contributed by the member . . . that is attributable to that service[.]" Thus, asserts respondent, it is clear that for purposes of calculating total service credit, any OPERS service credit must first be transferred from OPERS and then deposited in the fund, and, here, relator failed to transfer his OPERS service credit to the fund before the July 2, 2013, deadline set forth in 742.37(C)(1). Respondent also points out that it is the responsibility of the fund member to initiate the transfer, citing Adm.Code 742-5-07(I).

{¶ 37} The magistrate agrees with respondent's reading of the relevant statutes and regulations. Relator is correct that respondent is required to grant credit to members who have earned service credit in OPERS pursuant to R.C. 742.21(D) and 742.21(A)(3). However, R.C. 742.21(D)(1) explicitly conditions such full credit for service credit earned in OPERS upon the member's having transferred to the fund the amount attributable to OPERS service. Although relator did transfer to the fund the amount of service credit attributable to OPERS service, in order for that service credit to be considered in determining his average annual salary, it had to be transferred prior to January 2, 2013, as clearly set forth in R.C. 742.37(C)(1). Relator signed a certification for the transfer of OPERS funds into the fund in October 2013, certification was completed in November 2013, and the transfer of service credit occurred in January 2014. Therefore, because relator had total service credit below the 15-year threshold as of July 2, 2013, his annual average salary was required to be determined using 5 years of contributions, consistent with R.C. 742.37(C)(1). Furthermore, Adm.Code 742-5-07(I) makes clear that it is the responsibility of the fund member to initiate the transfer, providing that "[t]o initiate the transfer of

eligible service credit to OP&F under section 742.21 of the Revised Code, the member shall initiate the request with the transferring retirement system." Here, because relator failed to timely initiate the transfer process with OPERS according to the provisions in R.C. 742.37(C)(1) and Adm.Code 742-5-07(I), and ensure it was completed by the statutory deadline of July 2, 2013, he was ineligible for the 3-year statutory calculation.

{¶ 38} Relator's argument that respondent agrees with his interpretation when crediting his time as a member of OPERS for purposes of calculating overall length of service, yet inexplicably applies a different interpretation of "service credit" when calculating whether a member has 15 years of service credit prior to July 2, 2013, is not persuasive. Although relator properly transferred his OPERS credit to be included with his overall length of service in January 2014, for purposes of calculating the average annual salary, R.C. 742.37(C)(1) specifically provides that July 2, 2013, is the operative date for determining service credit; thus, the service credit must be transferred by that date to be considered in this calculation. Because relator did not transfer his service credit by this date, it was not considered for purposes of determining service credit in the calculation of annual average salary. Therefore, relator's argument is without merit.

{¶ 39} As for respondent's May 20, 2024, motion to strike relator's submitted record of evidence, the magistrate agrees that relator's submitted record was not certified pursuant to Loc.R. 13(G), and relator's November 13, 2023, and May 15, 2024, affidavits included in his submitted record were not before respondent at the time of its August 18, 2022, determination. Thus, even though these affidavits were not relevant to determine the issues addressed in this decision, relator's motion to strike is granted.

{¶ 40} Accordingly, the magistrate recommends that the court deny relator's petition for writ of mandamus, and respondent's motion to dismiss relator's submitted record is granted. Furthermore, due to the lateness of the request, relator's April 4, 2025, motion for status conference and/or submitting case for mediation is denied.


/S/ MAGISTRATE
THOMAS W. SCHOLL III



**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign
as error on appeal the court's adoption of any factual finding
or legal conclusion, whether or not specifically designated as
a finding of fact or conclusion of law under Civ.R.
53(D)(3)(a)(ii), unless the party timely and specifically
objects to that factual finding or legal conclusion as required
by Civ.R. 53(D)(3)(b). A party may file written objections to
the magistrate's decision within fourteen days of the filing of
the decision.